[S. F. No. 8882.   In Bank.—March 13, 1920.]

## SUDDEN & CHRISTENSON (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

[1] ADMIRALTY LAW—JURISDICTION OF FEDERAL COURTS—OBJECT OF SECTION OF FEDERAL CONSTITUTION.—By the adoption of article III, section 2, of the federal constitution, which provides that the judicial power of the federal courts shall extend to all cases of admiralty and maritime jurisdiction, the existing law of the sea was impliedly designated to furnish the rules by which the rights of litigants in maritime cases were to be determined, and the reason therefor was to withdraw the rules and limits of maritime law from the disposal and regulation of the several states, thereby securing that uniformity and consistency at which the constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other and with foreign nations.

[2] ID. — AMENDMENT TO JUDICIAL CODE — EXTENSION OF SAVING TO SUITORS' CLAUSE—CLAIMANTS IN MARITIME CASES UNDER STATE WORKMEN'S COMPENSATION ACTS — DETERMINATION OF CONSTITUTIONALITY NOT FORECLOSED BY DECISIONS.—The numerous decisions upholding the constitutionality of the saving to suitors' clause of the Judicial Code, which provides that the district courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it, do not determine the constitutionality of the code amendment of October 6, 1917, by which Congress extended the clause to secure to claimants for maritime injuries the rights and remedies under the workmen's compensation laws of the states, since the original clause saved remedies only, whereas the amendment saves both rights and remedies.

[3] ID.—CODE AMENDMENT UNCONSTITUTIONAL—DESTRUCTION OF UNIFORMITY OF MARITIME LAW.—The amendment of the Judicial Code of October 6, 1917, which extended the saving to suitors' clause to claimants for maritime injuries under the workmen's compensation laws of the states, destroys the uniformity which article III, section 2, of the constitution was aimed to secure in admiralty cases, since the compensation acts of the various states are widely divergent in their terms and not confined to the regulation of matters of a local nature.

APPLICATION for Writ of Certiorari to review an order of the Industrial Accident Commission.   Annulled.

The facts are stated in the opinion of the court.

McCutchen, Willard, Mannon & Greene and McCutchen, Olney & Willard for Petitioner.

Christopher M. Bradley, A. E. Graupner, Warren H. Pillsbury and Henry Heidelberg for Respondents.

LENNON, J.—*Certiorari* to review the action of the Industrial Accident Commission in awarding death benefits to respondents Maria and Carmina Soarez. The deceased, Joe Soarez, died as the result of an accidental injury sustained by him while employed as a stevedore on the deck of petitioner's vessel, which was at the time discharging a cargo of lumber at a San Francisco dock.

The rights and liabilities of the parties in connection with the injury and death of Soarez were matters clearly within admiralty jurisdiction, and, prior to the amendment of the Judicial Code in 1917, the application of the California Workmen's Compensation Act (Stats. 1917, p. 831) would have been an unwarranted invasion of the admiralty jurisdiction of the federal courts. (*Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, [Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 61 L. Ed. 1086, 37 Sup. Ct. Rep. 524].)

At the time the decision in the Jensen case was rendered, sections 24 and 256 of the Judicial Code gave to the district courts of the United States "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors in all cases, the right of a common-law remedy, where the common law is competent to give it." (36 Stat. 1091, 1160, c. 231; U. S. Comp. Stats., secs. 991, [3], 1233.) By act of October 6, 1917, hereinafter referred to as "the amendment," Congress amended the Judicial Code to extend the saving clause to secure "to claimants the rights and remedies under the Workmen's Compensation Law of any state." (Act Oct. 6, 1917, c. 97, 40 Stat. 395, sec. 2; Fed. Stats. Ann. Supp. 1918, pp. 401, 414; U. S. Comp. Stats. Supp. 1919, secs. 991 [3], 1233.)

Petitioner resists the application of the amendment in support of the award in the instant case upon the ground that the said amendment is in conflict with article III, sec-

tion 2, of the United States constitution and therefore wholly void.

[1]   Article III, section 2, of the constitution provides that the judicial power of the federal courts shall extend to all cases of admiralty and maritime jurisdiction. It is the theory of petitioner that the existing law of the sea was impliedly designated by this provision to furnish the rules by which the rights of litigants in maritime cases were to be determined. The correctness of this theory is not open to question. (Benedict's Admiralty, 4th ed., sec. 139; Willoughby on the Constitution, c. 55; *The Genessee Chief,* 12 How. 443, [13 L. Ed. 1058]; *The Lottawanna,* 21 Wall. 558, [22 L. Ed. 654]; *Workman* v. *New York,* 179 U. S. 552, [45 L. Ed. 314, 21 Sup. Ct. Rep. 212, see, also, Rose's U. S. Notes]; *Southern Pacific Co.* v. *Jensen, supra.*) Nor is it open to serious question that the reason for this implied adoption of the existing law of the sea as the basis and groundwork of the maritime system of the nation was to withdraw the rules and limits of maritime law from the disposal and regulation of the several states, thereby securing that uniformity and consistency at which the constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other and with foreign nations. (*The Lottawanna, supra; Southern Pacific Co.* v. *Jensen, supra.*) Whether or not the amendment to the Judicial Code assumes to authorize under federal sanction the exercise of a power of disposal and regulation over the rules and limits of maritime law which would be fatal to that uniformity and consistency which it was one of the primary objects of the constitution to secure is the question now presented for our determination.

[2]   On behalf of respondents, the suggestion is made that the numerous decisions upholding the constitutionality of the old "saving to suitors" clause of the Judicial Code foreclose all discussion in the instant case, for the reason that the present amendment is merely an expansion of that clause. The difficulty with this reasoning lies in the fact that the original "saving clause" saved *remedies* only, whereas the amended clause saves not only remedies but *rights* as well. Under the original clause, the substantive law, wherever administered, was for maritime cases the law of the sea. (*Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S.

372, [62 L. Ed. 1171, 38 Sup. Ct. Rep. 501].) The old "saving clause" did not, therefore, interfere with the uniform and harmonious operation of the maritime law, and, consequently, it did not violate the constitution. It by no means follows, however, that the same may be said of the clause as expanded to save to claimants the *rights* and remedies under the workmen's compensation law of any state. By the statute as so amended, Congress has adopted as part of the substantive maritime law of the nation the rules governing liability in the case of industrial accidents contained in the Workmen's Compensation Acts of the several maritime states. In general these acts, like that in force in this state, are exclusive in character; that is to say, where applicable at all, they furnish the *sole* basis for recovery in the case of industrial accidents. It follows that in states having this type of statute Congress has wholly abolished all liabilities under the general maritime law arising out of industrial accidents. (*The Howell,* 257 Fed. 578.) The Workmen's Compensation Acts in the various states are widely divergent in their terms. Moreover, if it be true, as it undoubtedly is, that the amendment must be interpreted prospectively, there is no visible limit to the possible future divergence between the terms of these laws. Finally, when it is considered that the courts have upheld clauses in the Workmen's Compensation Acts giving to those statutes an extraterritorial effect, it is at once apparent that the rules adopted by Congress to govern the liabilities of the parties in the case of maritime accidents cannot fail to present an aspect of "confusion worse confounded." The question in the instant case, therefore, is whether or not the divergence and confusion so created in the substantive law of the sea interferes with the proper harmony and uniformity of the maritime law in its international and interstate relations which it was the aim of the constitution to secure.

The constitutionality of the amendment to the Judicial Code has been upheld in *Stewart* v. *Knickerbocker Ice Co.,* 226 N. Y. 305, [123 N. E. 383]. The reasoning upon which the decision in that case was based is stated as follows by the court of appeals of New York: "In view of the close division of opinion amongst the learned justices of the supreme court, involved in the decision of the Jensen case,

and in view of the concession made in the prevailing opinion that it was difficult to determine just how far the jurisdiction of the federal courts in maritime matters might be limited or affected by such legislation, we think that we are justified in assuming that the Congress has acted within its powers under the constitution when, after due consideration, it has confided to the states the power to enact and enforce Workmen's Compensation Acts in respect of injuries received in the course of maritime employment. We think that it would be altogether an unjustifiable concession of lack of state jurisdiction in this field of compensation to injured workmen or their dependents if, after this amendment by the Congress, we should hold that our statute was unconstitutional.''

This reasoning appears to us to be based upon a misconception of the Jensen case. It is true that in that case four justices dissented, but it is in the prevailing opinion that we must seek for a statement of the law as established by the decision of the court. It is also true that that opinion concedes the difficulty of determining the exact extent to which state legislation may limit or affect maritime rights and states that, considering the former opinions of the court, ''it must now be accepted as settled doctrine that . . . Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country.'' The court did not mean to imply, however, that Congress in the exercise of this ''paramount power'' or that the state legislatures in the exercise of their somewhat indeterminate authority could destroy the uniformity of the maritime law which it was the aim of the constitution to secure. That the uniformity of the maritime law is guaranteed by the constitution itself is unequivocally stated and restated in the opinion of the court. That such, indeed, was the fundamental basis of the prevailing opinion is clearly recognized in the opinions of the dissenting justices. Since, therefore, it has been determined that, whatever may be the power of Congress or of the state legislatures in maritime matters, the constitution itself guarantees the uniformity of the maritime law, we can see no escape from the necessity of considering whether or not the amendment to the Judicial Code destroys the uniformity so guaranteed.

Respondents contend that by granting to Congress the power to regulate commerce with foreign nations, and among the several states and with the Indian tribes, the framers of the constitution evinced a purpose to secure consistency and uniformity of regulation identical with that evinced by extending the judicial power of the federal courts to all cases of admiralty and maritime jurisdiction. With this contention as a basis, respondents argue that the case of *James Clark Distilling Co.* v. *Western Maryland R. Co.*, 242 U. S. 311, [Ann. Cas. 1917B, 845, L. R. A. 1917B, 1218, 61 L. Ed. 326, 37 Sup. Ct. Rep. 180], which upholds the constitutionality of the Webb-Kenyon Act, (U. S. Comp. Stats., sec. 8739), is a conclusive authority in favor of the constitutionality of the enactment which we are now considering. The position of respondents in this behalf ·is squarely sustained by the opinion of Judge Hand in *The Howell*, 257 Fed. 578. The learned judge held, in effect, that the James Clark Distilling Co. case established the proposition that as to any matters over which Congress has jurisdiction, it may allow state legislation untrammeled until such time as in its own pleasure it may choose to assume explicit legislative control. While we have the· utmost respect for the learning and ability of the author of that opinion, after mature deliberation we are constrained to disagree with his conclusion.

. In *James Clark Distilling Co.* v. *Western Maryland R. Co., supra*, the United States supreme court held that Congress had power to forbid "the interstate shipment or transportation of intoxicating liquor which was intended ,by any person interested therein to be received, possessed, sold, or in any manner used either in the original package or otherwise, in violation of any law of the state into which the liquor is transported." It was claimed "that the act was not within the power given to Congress to regulate because it submitted liquors· to the control of the states by subjecing interstate commerce in such liquors to present and future state prohibitions, and hence, in the nature of things was wanting in uniformity." It is not, we think, open to serious question but that this claim would be sound as applied to any ordinary article of commerce or but that it would have prevailed with the court had liquor been regarded, as it once was, as an ordinary article of commerce.

(*Bowman* v. *Chicago & N. W. R. Co.*, 125 U. S. 465, [31 L. Ed. 700, 8 Sup. Ct. Rep. 689, 1062]; *Vance* v. *Vander-cook Co.* [dissenting opinion], 170 U. S. 438, 457, [42 L. Ed. 1100, 18 Sup. Ct. Rep. 674, see, also, Rose's U. S. Notes].) The United States supreme court has shown an unmistakable inclination to uphold restrictions upon traffic in liquor without openly declaring that liquor was not an ordinary article of commerce. In so doing, the court has resorted to applications of constitutional principles which would not have been applied in like manner to uphold restrictions upon traffic in lumber or cotton which were similar in their scope and effect. (See Willoughby on the Constitution, secs. 317–321, inclusive.) This fact is recognized by the chief justice in the closing paragraph of the opinion in the James Clark Distilling Co. case: "Before concluding, we come to consider what we deem to be arguments of inconvenience which are relied upon; that is, the dread expressed that the power by regulation to allow state prohibitions to attach to the movement of intoxicants lays the basis for subjecting interstate commerce in all articles to state control, and therefore destroys the constitution. The want of force in the suggested inconvenience becomes patent by considering the principle which, after all, dominates and controls the question here presented, that is, the subject regulated and the extreme power to which that subject may be subjected. *The fact that regulations of liquor have been upheld in numerous instances which would have been repugnant to the great guarantees of the constitution but for the enlarged right possessed by government to regulate liquor has never, that we are aware of, been taken as affording the basis for the thought that government might exert an enlarged power as to subjects to which, under the constitutional guaranties, such enlarged power could not be applied.* In other words, the exceptional nature of the subject here regulated is the basis upon which the exceptional power exerted must rest, and affords no ground for any fear that such power may be constitutionally extended to things which it may not, consistently with the guaranties of the constitution, embrace." (The italics are ours.)

The difference between the character of the Webb-Kenyon Act and the amendment to the Judicial Code now under consideration, as well as the difference between the subjects

of which these two laws treat, is manifest. The one deals with certain property the abuse of which is a menace to society. The other deals with ships (of whose vital importance to the welfare and even to the life of the nation the recent war furnishes a vivid reminder) and subjects them at one and the same time to the varying, and even conflicting, laws of the many states at whose ports they must call in the course of their necessary wanderings. As stated in *The Lottawanna,* 21 Wall. 558, [22 L. Ed. 654]: "The general system of maritime law which was familiar to the lawyers and statesmen of the country when the constitution was adopted was most certainly intended and referred to when it was declared in that instrument that the judicial power of the United States shall extend 'to all cases of admiralty and maritime jurisdiction.' . . . One thing, however, is unquestionable; the constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country." There was no general system of liquor laws designed to be preserved by the constitution. Indeed, the subject matters of the two enactments which respondents seek to link together are so vitally and patently different in nature, purpose, history, and circumstance that we find it impossible to conceive that the question of the constitutionality of one is conclusively determined by the ruling on the constitutionality of the other. We therefore consider ourselves not only free, but also under a manifest and unescapable duty, to consider on its own merits the question as to whether or not the Judicial Code as amended in effect destroys the uniformity of the admiralty and maritime law, which, like the law-merchant, is always national, even international, in character, and necessarily so to fulfill its mission.

It is only in case the state Workmen's Compensation Acts merely assume to regulate matters of a local nature admitting of diversity of treatment according to local necessities that their adoption by Congress as part of the maritime law would not be destructive of that uniformity which it was the aim of the constitution to secure. (*Gibbons* v. *Ogden,* 9 Wheat. 1, [6 L. Ed. 23]; *Port Richmond Ferry* v. *Hudson County,* 234 U. S. 317, [58 L. Ed. 1330, 34 Sup. Ct. Rep. 821]; *Wilmington Transp. Co.* v. *California R. R. Com.,* 236 U. S. 151, [59 L. Ed. 508, 35 Sup. Ct. Rep. 276];

*Wabash etc. R. Co.* v. *Illinois,* 118 U. S. 557, [30 L. Ed. 244, 7 Sup. Ct. Rep. 4, see, also, Rose's U. S. Notes].) That such, however, is not the nature and effect of the Workmen's Compensation Acts has been conclusively determined by the United States supreme court in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, [Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 61 L. Ed. 1086, 37 Sup. Ct. Rep. 524]. In this behalf the court said: "If New York can subject foreign ships coming into her ports to such obligations as those imposed by her compensation statute, other states may do likewise. The necessary consequences would be destructive to the very uniformity in respect to maritime matters which the *constitution* was designed to establish; and the freedom of navigation between the states and with foreign countries would be seriously hampered and impeded. A far more serious injury would result to commerce than could have been inflicted by the Washington statute authorizing a materialman's lien, condemned in *The Roanoke,* 189 U. S. 185, [47 L. Ed. 770, 23 Sup. Ct. Rep. 491, see, also, Rose's U. S. Notes]." "The legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed. *So applied, it conflicts with the constitution and to that extent is invalid."* (The italics are ours.)  After admitting that state legislation may to some extent change or modify the general maritime law, and after refusing to attempt to define with exactness just how far such changes and modifications are valid, the court continued: "And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations. *This limitation, at least, is essential to the effective operation of the fundamental purpose for which such law was incorporated into our national laws by the constitution itself."* (The italics are ours.)  The decision in the Jensen case was based, therefore, upon the conclusion that the Workmen's Compensation Act of New York (Consol. Laws, c. 67), as applied to maritime accidents, did work material prejudice to the characteristic features of the general maritime law and did interfere with the proper harmony and uniformity of

that law in its relation to international and interstate relations.

It is true that this language was used of the Workmen's Compensation Act of New York as applied to maritime accidents *ex proprio vigore.* But by no possible process of reasoning can it be asserted that that act, or any of the other varying and conflicting Workmen's Compensation Acts of the several maritime states, can have the effect of destroying the uniformity of the general maritime law when their force is derived from the respective state legislatures, but that these identical acts have precisely the opposite effect when their force is derived from the act of Congress. If the Workmen's Compensation Act of New York, or of California, operating in the field of maritime accidents by the act of the state legislature would have the effect of inflicting upon commerce a far more serious injury than that which would have resulted from the Washington statute authorizing a materialman's lien which was condemned in *The Roanoke, supra,* its effect in the same field can be no less injurious and no more consonant with the uniformity of regulation which it was the aim of the constitution to secure if its operation is extended to that field by the act of Congress. If the effect of the statute as enacted by the state legislature was to make its application to maritime accidents a violation of the constitution of the United States by reason of the fact that it destroyed the uniformity of the law of the sea, such must of necessity be its effect when enacted by Congress, for the identical conflicts and inconsistencies are adopted and perpetuated.

[3] We therefore conclude that the amendment to the Judicial Code is unconstitutional in that it violates article III, section 2, of the constitution of the United States.

The award is annulled.

Shaw, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.