## HOME LIFE & ACCIDENT CO. v. WADE et al. (No. 741.) *

(Court of Civil Appeals of Texas. Beaumont. Dec. 22, 1921. Rehearing Denied Jan. 11, 1922.)

**Admiralty ⚖══20 — Workmen's Compensation Act inapplicable to maritime accident.**

An employee injured while on a derrick barge in the Sabine river, assisting in loading cranes, is not entitled to compensation under the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246nn); his cause of action, if any, being within the admiralty jurisdiction of the federal courts.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Proceedings under the Workmen's Compensation Act by C. Wade, opposed by A. C. MacFarlane, employer, and the Home Life & Accident Company, insurer. From an award of compensation sustained by the district court, the insurer appeals. Reversed and rendered.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Jas. A. Harrison, of Beaumont, for appellees.

WALKER, J. This suit was filed by appellant in the nature of an appeal from an award of the Industrial Accident Board in favor of appellee and his attorney, James A. Harrison. This appeal involves the question whether one injured in work, maritime in its nature, can recover compensation under the Workmen's Compensation Law of Texas (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246nn). The trial was to the court without a jury, and judgment was for defendant, C. Wade, for compensation under the Workmen's Compensation Act of Texas. On motion of plaintiff, the trial court filed conclusions of fact, from which we quote as follows:

"(1) That on April 27, 1920, A. C. MacFarlane was a subscriber to the Employers' Liability Act and on that date carried a policy of insurance with the Home Life & Accident Company.

"(2) That on said 27th day of April, 1920, C. Wade was in the employ of the said A. C. MacFarlane and as such employee was covered by said policy of insurance.

"(3) The Home Life & Accident Company issued and delivered to A. C. MacFarlane a written contract wherein, for a stipulated consideration which was paid by said MacFarlane and received by said Home Life & Accident Company, said company agreed and bound itself to pay to the employees of said A. C. MacFarlane the compensation in the manner and as provided in the Employers' Liability Act of Texas.

"(4) On April 27, 1920, C. Wade, while engaged in the course of his employment with A. C. MacFarlane, sustained injuries which resulted in total incapacity for 12 weeks and permanent partial incapacity for the rest of his life.

"(5) C. Wade was employed by said A. C. MacFarlane as a structural iron and steel worker. That the business he was engaged in was dismantling steel cranes, which work was performed on land. The men so engaged were to cut down the cranes and after same were cut down were to load them on a barge in the Sabine river. About three weeks was consumed in working on land cutting down the cranes and about one week would be required to load same on the vessel. The steel cranes had been cut down and Wade was on a derrick barge in the Sabine river, assisting in loading the material from the dismantled cranes on a barge in the Sabine river, when he was injured. The cranes were dismantled on the Louisiana side of the Sabine river, in the state of Louisiana, and after being loaded on said barge were to be transported on said barge to some point in Texas. The Sabine river is a navigable stream, but C. Wade was not the master or seaman on any vessel, and had nothing to do with the manipulation or operation of any vessel, but his duties, as stated above, were those of a structural steel and iron worker.

"(6) The contract of employment between C. Wade and A. C. McFarlane was made in Orange, in the state of Texas, and part of his duties under said contract were performed in the state of Texas, but the work on the cranes as aforesaid, which were located across the river on the Louisiana side, required said Wade and the other employees of said MacFarlane engaged in said work to perform some of their labors in the state of Louisiana."

The facts thus found by the trial court brought appellee's cause of action, if any he had, within the admiralty jurisdiction of the federal courts. Speaking for the Supreme Court of the United States in Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, Mr. Justice Hughes said:

"The libelant was injured upon a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and stowing a ship's cargo is of this character"

—holding that the subject of the suit was "of a maritime nature."

Nor do we think that this case can be distinguished from those cited on the ground that when he was injured appellee was performing duties only incident to his regular employment; that his regular employment was for the performance of duty on land. When he was injured appellee was at work

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 8, 1922.

on a barge upon navigable waters, discharging duties required of him by his employment under the terms of his employment. The fact that he was on the barge and assisting in loading it brings this case, we think, within the rule announced in the case just above cited.

As we understand the recent decisions of the Supreme Court of the United States (Southern Pacific v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Peters v. Veasey, 251 U. S. 121, 40 Sup. Ct. 65, 64 L. Ed. 180), we believe the trial court erred in rendering judgment for the defendant, Wade, on the facts found by him. This proposition is involved in appellant's first assignment of error, which is as follows:

"The trial court erred, to the prejudice of the plaintiff, in entering judgment against the plaintiff and in favor of the defendant, C. Wade, for compensation under the Workmen's Compensation Law of the state of Texas, for that it appeared from the undisputed evidence that at the time of the accident in question Wade was engaged upon a navigable stream, loading a barge with material to be transported from a point in the state of Louisiana to a point in the state of Texas, by water; such judgment being in violation of article 3, § 2, of the Constitution of the United States, which article and section places the jurisdiction of admiralty and maritime cases exclusively in the courts of the United States."

This question was directly presented to the Attorney General's department of this state by the Industrial Accident Board, and in an opinion of date July 3, 1920, that department held:

"After reading the opinion in the Knickerbocker Case, we are forced to the conclusion that your Board has no authority over a claim over which the admiralty court has jurisdiction, or where the employé is engaged in maritime work. This is made plain by the majority opinion in the Knickerbocker Case."

We believe it would be well to give the following excerpts from this opinion:

"State Industrial Accident Board, Capitol—Gentlemen: This will acknowledge receipt of your letter of June 30, 1920, in which you make certain inquiries as to the applicability of the Texas Employers' Liability Act. This letter reads:

" 'This department desires to secure your opinion with reference to what its course of action should be in administering the provisions of the Employers' Liability Act in cases environed in and arising out of the following circumstances, to wit:

" 'The provisions of the Employers' Liability Act undertake to embrace the employees of all subscribing employers of labor in this state who are not expressly excluded by the exceptions contained in section 2, part 1, of the law.

" 'Through the operations of the Compensation Law, individuals, firms, and corporations whose business it is to undertake the loading and unloading of vessels and ships upon their arrival and departure in the various ports of this state, which vessels and ships are engaged in maritime transportation, have exercised the option to the same, thus making all effort possible to bring themselves and their employees within the provisions of said law.

" 'Under date of May 17, 1920, the Supreme Court of the United States, expressing itself through an opinion written by Mr. Justice McReynolds, held, if we understand the opinion, that state Legislatures were without power to enact legislation which disturbed or infringed upon the rules of the general maritime and admiralty laws of the land, or that undertook to confer upon any other tribunal the exercise of any power or authority vested in the federal courts in reference to their rights to enforce and execute the maritime and admiralty laws of the country.

" 'In the past many men employed by subscribing employers have been injured while engaged in the loading and unloading of vessels engaged in transportation business upon navigable waters, and until the rendition of the above-mentioned opinion these men, and the beneficiaries or deceased workmen, injured and killed while engaged in the character of labor mentioned, have recovered compensation through the administration of the compensation law of this body, and there are now pending before us, in process of adjudication, numbers of other claims on behalf of both injured workmen and the surviving beneficiaries of deceased workmen, and we are anxious to have you advise as to what our action shall be respecting these claims. It has occurred to us that the effect of the opinion of the Supreme Court of the United States is to hold that the Compensation Law of this state is absolutely unconstitutional and inoperative in so far as it relates to employees engaged in labor that is under the admiralty and maritime jurisdiction of the land; and that, if this view of the effect of the court's opinion is a sound one, then that it follows that the Industrial Accident Board is utterly without power to take action of any character in connection with claims which have their origin upon navigable waters, and that it is our duty to advise all parties who may be interested in a particular claim so circumstanced that we have no authority or power in connection with it.'

" '*  *  *  * After reading the opinion in the Knickerbocker Case, we are forced to the conclusion that your Board has no authority over a claim over which the admiralty court has jurisdiction, or where the employee is engaged in maritime work. This is made plain by the majority opinion in the Knickerbocker Case.

" '*  *  * In view of the holding in the Knickerbocker Case, we are of the opinion that when a claim is filed with your honorable body that indicates that the employee was injured while engaged in maritime work, that you should make a full investigation as to the place and manner of injury, and if the facts show that it is such a case that the admiralty courts would have jurisdiction, then you should dismiss the case for lack of jurisdiction."

Of course, we recognize that an opinion from the Attorney General is not binding on

this court, but we believe he has correctly construed the decision of the Supreme Court above cited, and adopt his conclusion as our own. Dorman's Case, 236 Mass. 583, 129 N. E. 352, is directly in point, and sustains the Attorney General's opinion.

Appellee would further distinguish this case from the cases cited by the following counter propositions:

"(1) Appellee's cause of action is not in tort, but is of contract, and is governed by the rules of law applicable to contracts.

"(2) The contract in question is not a maritime contract, and the federal courts have no jurisdiction thereof.

"(3) Even should it be held that the contract sued upon is a maritime contract, over which a court of admiralty could exercise jurisdiction, nevertheless, since only a personal judgment based on contract is sought against appellant, appellee had the right to sue in the state courts and enforce the contract liability.

"(4) Appellant, having contracted to pay the compensation sued for and having accepted and received the premiums demanded as consideration for the contract, is estopped from contesting the validity or binding force of the contract."

As applied to the facts of this case, we do not believe that these counter propositions are well taken. Each and all of them appear to be involved in the decisions above cited, and were decided against appellee's contention.

It is our judgment that every point involved in this statement of the case has been decided against appellee. From what we have said it follows that the judgment of the trial court must be in all things reversed and judgment here rendered in favor of appellant. And it is accordingly so ordered.