JOSEPH LESZCZYMSKI ET ALS. vs. ANDREW RADEL OYSTER COMPANY ET AL.

Third Judicial District, Bridgeport, April Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

If an appeal from a Compensation Commissioner involves certain questions of law in addition to claimed corrections of the finding, the Superior Court may properly rule upon the errors relating to the finding and reserve the remaining questions for the advice of this court only when it is certain that neither party desires to have such rulings reviewed; otherwise the entire case should be reserved.

The Compensation Commissioner is an administrative officer and the appeal to the Superior Court from his finding and award is an original application to the court to exercise its appropriate judicial power in respect to acts done by him in his administrative capacity which are in excess of, or in the unlawful abuse of, his power.

Upon such an appeal, the Superior Court cannot retry the facts, but it may inquire into them so far as may be necessary to determine whether the Commissioner's action was illegal, irregular, or informal, whether it was based upon a misconception of his powers and duties, or is so unreasonable as to justify judicial interference.

The power of the Superior Court to correct a finding is not subject to the constitutional limitation imposed upon the jurisdiction of this court.

In the exercise of its power to determine whether the Commissioner's action was so unreasonable as to justify judicial inter-

ference, the Superior Court may correct his finding when it appears from the record that he has found facts without evidence, or that he has failed to find admitted or undisputed facts, or that he has found an ultimate fact which is not legally or logically supported by the subordinate facts, or that he has found a fact by an inference which no reasonable man could draw in a reasoning way, or that his decision has been affected by a refusal to consider relevant and material facts.

In the present case, the trial court made certain additions of fact to the Commissioner's finding. *Held* that its action was fully justified, since the facts were uncontradicted, relevant, established by credible witnesses, and since the record did not show that their omission had not affected the decision and did show they were essential to the presentation of the question of law raised by the defendant as to the Commissioner's jurisdiction.

No part of the evidence before the Commissioner should be certified to the Superior Court unless the reasons of appeal assign as error the omission of some specific finding as to a subsidiary fact or the addition of a material fact not found, or unless it appears necessary to do so in order to protect the substantial rights of parties not represented by counsel.

The jurisdiction of the State courts in admiralty cases is fixed by the provision of the Judiciary Act of 1798 (36 U. S. Stat. at Large, Chap. 231, § 256) "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."

The remedies thus enforceable in the State courts may include statutory modifications of the common law, provided they do not work material prejudice to the characteristic features of the general maritime law and do not interfere with the proper harmony and uniformity of that law in its connection with international and interstate relations.

It is now the established doctrine of the United States Supreme Court—and therefore to be followed in the several States—that local Workmen's Compensation Acts do not meet this test and are therefore not applicable to injuries arising out of maritime contracts of employment and occurring in navigable waters; and that congressional legislation seeking to extend their application to such injuries, is unconstitutional.

This rule governs cases under Compensation Acts which, like our own, are optional or contractual as well as those which are compulsory.

The case of *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, overruled in so far as it holds that the courts of this State have concurrent jurisdiction with admiralty courts over claims arising

out of maritime contracts of employment made in Connecticut by citizens of Connecticut.

Argued November 7th, 1924, reargued April 16th, 1925—decided June 2d, 1925.

APPEAL by the defendants from the finding and award of the Compensation Commissioner of the fourth district in favor of the plaintiffs, taken to and reserved by the Superior Court in Fairfield County, *Banks, J.,* for the advice of this court. *Superior Court advised to sustain the appeal and vacate the award.*

*Samuel Reich,* for the plaintiffs.

*William B. Ely,* for the defendants.

WHEELER, C. J.  Walter Linsky was a deck-hand and one of the crew employed on the oyster boat "Standard" engaged in dredging oysters.  On July 15th, 1922, at the finish of the day's work, the boat was docked at the foot of Pembroke Street, Bridgeport, Connecticut, in navigable water of the United States.  Linsky, while so employed, went on shore after the finish of his day's work and returned to the boat between nine and nine-thirty of the evening of this day, and lay down to sleep on the deck upon the hatch between two fellow employees.  About midnight it was discovered that he had fallen from the boat into the water, and in consequence he drowned.  The commissioner found that "the accident which led to his death arose out of and in the course of his employment," and awarded compensation to the claimants.

The defendant employer, in its appeal from the finding and award of the commissioner, assigns as errors certain refusals to correct the finding and, as a further error, that the commissioner had no jurisdiction in the premises, because Linsky was engaged under a

maritime contract and was killed by falling off a boat, when the same was in navigable water of the United States. The court passed upon the errors based upon the motion to correct the finding, and added three of the paragraphs of the motion, and then, of its own motion, reserved the questions of law raised by reasons of appeal one, two, three, eight, nine and ten upon the finding as thus corrected. In the present case the practice pursued by the trial court in passing upon the errors relating to the corrections of the finding and then reserving the other questions of law was a desirable practice to pursue, since neither party desired to have the ruling on the errors relating to corrections of the finding reviewed. But in a case where either party purposed to have or were likely to have such ruling reviewed, the practice should not be pursued as it would be apt to unnecessarily complicate the appeal.

The correction of the finding of the commissioner by the trial court, leads us to restate the scope of the power of the court to make such correction. The commissioner is an administrative officer. The appeal to the Superior Court from his finding and award is an "original application to the Superior Court to exercise its appropriate judicial power in respect to acts done by the administrative tribunal in excess of its power, or in the unlawful abuse of that power." *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 149, 93 Atl. 245. The Superior Court cannot retry the facts. It inquires into the facts merely to determine whether " 'the finding and award . . . appealed from are unauthorized in law, irregular or informal, or based upon a misconception of the law, or of the powers or duty of the administrative tribunal, or are so unreasonable as to justify judicial interference'." *Kennerson* v. *Thames Towboat Co.,* 89 Conn. 367, 370, 94 Atl. 372.

"The power of the Superior Court in the correction

of a finding of a compensation commissioner is anal-
ogous to, and its method of correcting the finding simi-
lar to, the power and method of this court in correcting
the finding of the Superior Court." *Thompson* v.
*Twiss,* 90 Conn. 444, 446, 97 Atl. 328; *Swanson* v.
*Latham,* 92 Conn. 87, 90, 101 Atl. 492; *Atwood* v.
*Connecticut Co.,* 95 Conn. 669, 673, 112 Atl. 269. The
court may correct a finding when the reasons of appeal
assign as error the "omission of some specific finding
as to a subsidiary fact, or the addition of a material
fact not found." Except for this purpose, and "when-
ever it appears necessary to do so in order to protect
the substantial rights of parties not represented by
counsel," no part of the evidence before the commis-
sioner should be certified to the Superior Court.
*Rainey* v. *Tunnel Coal Co.,* 93 Conn. 90, 93, 105 Atl.
333.

The Superior Court can correct the finding of the
commissioner so as to strike out facts found without
evidence, or to add facts which are admitted or undis-
puted facts. *Palumbo* v. *Fuller Co.,* 99 Conn. 353, 355,
122 Atl. 63. But this rule of practice does not cover
all of the cases in which the Superior Court can act,
unless an "admitted or undisputed fact" shall be held
to mean, as it well may, a fact in law admitted or un-
disputed. For in *Powers* v. *Hotel Bond Co.,* 89 Conn.
143, 153, 93 Atl. 245, we say: "The court cannot re-
view conclusions of fact made by a commissioner which
merely concern the weight of evidence and the credi-
bility of witnesses; and rulings of this character are
the only ones involved in the decision of the partial
dependency of this claimant. If the commissioner had
found facts which might materially have influenced
his decision, without evidence, or if the subordinate
facts found neither legally nor logically supported the
ultimate fact, or if the commissioner had refused to

consider facts which would have been relevant to his decision and which the record did not show had not affected the decision, he would have committed an error of law, and his ruling or decision would have been reviewable." See also *Thompson* v. *Twiss,* 90 Conn. 444, 446, 97 Atl. 328.

A correction of the finding of a fact by an inference drawn, may also be made when it was an inference "which a reasonable man could not draw in a reasoning way, . . . for it would then be so unreasonable as to justify judicial interference." *Saunders* v. *New England Collapsible Tube Co.,* 95 Conn. 40, 43, 110 Atl. 538. The foundation underlying the power which the Superior Court exercises in correcting a finding of a commissioner is its right to correct the finding when it is "so unreasonable as to justify judicial interference." The evidence certified, if followed, required the additions as made by the court. It is uncontradicted. There is nothing in the record to indicate that the witnesses were not to be credited. Upon the face of the evidence it is credible, and the commissioner has not found that he did not credit this evidence. The trial court, upon the record, would have been abundantly justified in finding that the additions it ordered made to the finding were relevant to the decision upon the question of jurisdiction, that the record did not show that their omission had not affected the decision; on the contrary, the corrections made justified judicial interference in order to permit the question of jurisdiction to be made. Corrections of a finding by this court are subject to the limitations upon our jurisdiction imposed by the Constitution. Corrections of a finding of the commissioner by the Superior Court are not subject to such limitations.

*Kennerson* v. *Thames Towboat Co.,* 89 Conn. 367, 94 Atl. 372, fully supports the award made by the com-

missioner. The decedent lost his life while engaged in the performance of maritime work under a contract of employment and in navigable water outside our jurisdiction. We held that while the admiralty court had the right to take jurisdiction over this maritime contract, since the proceeding is a personal one, it had not exclusive jurisdiction, but the contract might be enforced in our State court; that the Judiciary Act of 1789 (36 U. S. Stat. at Large, Chap. 231), in the clause (§ 256) "saving to suitors, in all cases, the right of a common-law remedy; where the common law is competent to give it," gave to the State courts not merely the remedies existing in the common-law courts, but all methods of enforcing rights and redressing injuries known to the common or statutory law therein existing. This decision is of controlling authority unless repugnant to the law as since announced by the United States Supreme Court, as claimed by the defendant, in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 37 Sup. Ct. 524, and other cases decided upon the doctrine of that case. The plaintiffs' main contention is that the *Jensen* case and succeeding cases in the United States Supreme Court were decided upon Compensation Acts compulsory in character, while the Connecticut Act is of the contractual or elective kind, and that it has not as yet been held that a voluntary contract entered into by parties in Connecticut under our Compensation Act cannot be enforced in our State courts even though the injury occur to one while engaged in maritime work upon navigable water. The decisions rendered must answer the claim of the defendants and determine whether the distinction drawn by the plaintiffs is tenable.

In *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 37 Sup. Ct. 524, the work the deceased was engaged upon when he sustained his injury was maritime in nature

and occurred on navigable water. He had been awarded compensation under the New York Act, which was compulsory. The court held that the Judiciary Act with its saving exception, which we have quoted, leaves open the common-law remedies as applied by the State courts, and also some power of legislation to the States to change, modify, or effect the general maritime law, but that its extent cannot be defined with exactness. It placed its decision upon two principal grounds: (1) "The remedy which the compensation statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court, and is not saved to suitors from the grant of exclusive jurisdiction." This ground is equally applicable to the contractual as to the compulsory Compensation Act. (2) Legislation by the States changing, modifying or affecting the general maritime law is invalid, "if it contravenes the essential purpose expressed by an Act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." Therefore if New York can impose the obligations of her Act, other States can impose theirs, and the necessary consequence would be the destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish. The ground of this argument would apply equally to pilotage fees, recovery in death cases, and liens for repairs, in all of which instances legislation is conceded to be valid. It likewise would apply to a Compensation Act contractual in character equally as to one compulsory in character.

A reargument of the case was had, and four justices dissented, while two of these, Mr. Justice Holmes and

Mr. Justice Pitney, controvert the grounds of this decision in opinions of exceptional ability, leaving little else to be said by way of argument or judicial research or analysis.

At the same time the *Jensen* case was decided, another case, *Clyde Steamship Co.* v. *Walker*, 244 U. S. 255, 37 Sup. Ct. 545, was decided upon its authority, the court saying: "The legislature exceeded its authority in attempting to extend the statute to conditions like those which the record discloses."

In *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372, 382, 38 Sup. Ct. 501, the court renewed its adherence to the principal ground upon which the *Jensen* case was rested, in these words: "Under the doctrine approved in *Southern Pacific Co.* v. *Jensen*, no State has power to abolish the well-recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of the 'uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States.' "

This was reiterated by Mr. Justice Day as the ground of the decision in *Union Fish Co.* v. *Erickson*, 248 U. S. 308, 39 Sup. Ct. 112. In October, 1917, the Supreme Court of Wisconsin, in *Neff* v. *Industrial Commission*, 166 Wis. 126, 164 N. W. 845, held that their Compensation Act—a contractual Act—was not applicable to an injury occurring in navigable water in work done under a maritime contract, upon the holding in the *Jensen* case.

On October 6th, 1917, five months after the *Jensen* case was decided, Congress amended § 9 of the Judiciary Act by adding "and to claimants the rights and

remedies under the workmen's compensation law of any State." 40 U. S. Stat. at Large, 395. In February, 1918, the Louisiana Supreme Court held the amendment of Congress retroactive and constitutional and sustained an award under its contractual Compensation Act. In *Thornton* v. *Grand Trunk-Milwaukee Car Ferry Co.,* 202 Mich. 609, 168 N. W. 410, decided in July, 1918, the court held that under the *Jensen* case it had no jurisdiction of a claim for an award arising under the Michigan Compensation Act—an optional Act—and that the amendment by Congress following the *Jensen* case, was not retroactive. In *Duart* v. *Simmons,* 231 Mass. 313, 121 N. E. 10, decided in November, 1918, the court held that the remedy given by their elective or contractual Compensation Act could not be invoked by one injured while engaged upon a maritime contract in navigable water, for the reason it states: "We feel constrained by the controlling authority of the *Jensen* case to hold that it does not apply to injuries having a maritime origin. . . . The reasoning of that decision seems to us to apply equally to an elective as to a compulsory Workmen's Compensation Act." It concludes, with the Michigan court, that the amendment of Congress is not retroactive. In June, 1919, the Minnesota court reversed its holding made prior to the *Jensen* case, and held that their contractual Compensation Act did not apply to workmen injured while engaged in maritime work, under the conclusive authority of the *Jensen* case. *Soderstrom* v. *Curry & Whyte, Inc.,* 143 Minn. 154, 173 N. W. 649. The court concludes that the amendment of Congress did not apply to the present case, which arose prior to its enactment. In December, 1919, the Supreme Court of the United States, in *Peters* v. *Vesey,* 251 U. S. 121, 40 Sup. Ct. 65, held this amendment was not retroactive, and, under the *Jensen*

case, that the Compensation Act of Louisiana had no application to the case of one injured while at work unloading a steamer in navigable water.

In 1920, the Supreme Court of New Jersey reached like conclusions in *O'Brien* v. *Scandinavian-American Line*, 94 N. J. L. 244, 109 Atl. 517; and *Georgia Casualty Co.* v. *American Milling Co.*, 169 Wis. 456, 172 N. W. 148, decided in June, 1919, held that compensation for maritime injuries under a contractual Compensation Act would be unconstitutional, citing the *Jensen* case for its authority. The amendment of Congress was not referred to in the opinion, presumably because the injury arose prior to the passage of the amendment. On March 13th, 1920, the Supreme Court of California held this amendment unconstitutional, upon the authority of the *Jensen* case, whose decision it held "was based, therefore, upon the conclusion that the Workmen's Compensation Act of New York, . . . as applied to maritime accidents, did work material prejudice to the characteristic features of the general maritime law, and did interfere with the proper harmony and uniformity of that law in its relation to international and interstate relations." The award under the Compensation Act thus held void was made under an elective Act. This was the first case to be decided in a State court following the passage of this amendment. *Sudden & Christenson* v. *Industrial Accident Commission*, 182 Cal. 437, 188 Pac. 803. In *Stewart* v. *Knickerbocker Ice Co.*, 226 N. Y. 302, 123 N. E. 382, the appeal was from an award made under the New York Compensation Act, for injuries received when engaged in maritime work on navigable water. The court held that the amendment of Congress was constitutional and that it released the remedies of the Compensation Act from the conclusion reached in the *Jensen* case. It is worth noting that

Chief Justice Hiscock states that the question which was decided in the *Jensen* case was not considered by his court in that case. When this case reached the Supreme Court of the United States, as *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 40 Sup. Ct. 438, the opinion (handed down in May, 1920) characterized the Act of Congress this way: "It sought to authorize and sanction action by the States in prescribing and enforcing, as to all parties concerned, rights, obligations, liabilities and remedies designed to provide compensation for injuries suffered by employees engaged in maritime work." It held the amendment in violation of the Constitution, chiefly upon this ground: "Moreover, such an authorization would inevitably destroy the harmony and uniformity which the Constitution not only contemplated but actually established—it would defeat the very purpose of the grant. . . . Obviously, if every State may freely declare the rights and liabilities incident to maritime employment, there will at once arise the confusion and uncertainty which framers of the Constitution both foresaw and undertook to prevent." This restated and re-emphasized the basis of the decision in the *Jensen* case. In neither case did the court attempt to distinguish between a compulsory and a contractual Compensation Act; on the contrary, it affirms the purpose of Congress to have the amendment apply to "Workmen's Compensation Laws of the several States." The opinion also reiterated the minor ground of its opinion in the *Jensen* case, "that the saving clause taken from the original Judiciary Act had no application, since, at most, it only specified common-law remedies, whereas the remedy prescribed by the compensation law was unknown to the common law and incapable of enforcement by the ordinary processes of any court."

In *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 42

Sup. Ct. 89, the court upholds a right of action in admiralty for death from a maritime tort committed on navigable water within a State whose statutes give a right of action on account of death by wrongful act. The court further says: "We have recently discussed [citing the cases to which we have already referred] the theory under which the general maritime law became a part of our national law, and pointed out the inability of the States to change its general features so as to defeat uniformity—but the power of a State to make some modifications or supplements was affirmed." And then it states the underlying reason for its decision in these words: "As the logical result of prior decisions we think it follows that, whether death upon such waters results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given. The subject is maritime and local in character and the specified modification of or supplement to the rule applied in admiralty courts, when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations."

*Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, 42 Sup. Ct. 157 (decided in January, 1922), was the case of one having received injury, through his employer's negligence, while at work on an uncompleted vessel lying at a dock in navigable water. Both parties had come under the Oregon Compensation Act, an elective Act, which prescribed an exclusive remedy. The court held that the exclusive features of the Oregon Act would apply and abrogate the right to recover

damages in an admiralty court, saying: "Under such circumstances regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations. . . . This conclusion accords with *Southern Pacific Co.* v. *Jensen,* . . . *Chelentis* v. *Luckenbach S. S. Co.,* . . . *Union Fish Co.* v. *Erickson,* . . . and *Knickerbocker Ice Co.* v. *Stewart.* . . . In each of them the employment or contract was maritime in nature and the rights and liabilities of the parties were prescribed by general rules of maritime law essential to its proper harmony and uniformity. Here the parties contracted with reference to the State statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential." The distinction between the *Jensen* case and this is clearly pointed out, and the authority and doctrine of that case reaffirmed. The United States Supreme Court in *State Industrial Commission* v. *Nordenholt Co.,* 259 U. S. 263, 42 Sup. Ct. 473 (decided in May, 1922), determined that an employee injured while working upon a completed vessel in navigable water is in the performance of a maritime contract and the liability of his employer to him for such injury determined under maritime law; but when the injury occurs on land, the employment is not maritime and the liability is determined by local law, and consequently there is no antagonism between that and the maritime law, and therefore the enforcement of the local law will not work material prejudice to any characteristic feature of the general maritime law. The court also held that the employer's liability prior

to the New York Workmen's Compensation Act would have depended upon the common law and when, by local statute, that was superseded by the Compensation Act, it did not conflict with the maritime law.

In *Washington* v. *Dawson & Co.* and *Industrial Accident Commission* v. *Rolph Co.*, 264 U. S. 219, 44 Sup. Ct. 302, decided in February, 1924, both cases concerned a maritime contract of an employee engaged in maritime work. Congress had, by a second amendment to § 9 of the Judiciary Act, undertaken to permit application of the workmen's compensation laws of the several States to injuries within the admiralty and maritime jurisdiction, excepting the masters and crews of vessels. The Washington and California courts held the amendment unconstitutional, under the doctrine of the *Jensen* and *Knickerbocker Ice Co.* cases. The Supreme Court says: "Counsel insist that later conclusions of this court have modified the doctrine" of these cases. And thereupon, in disapproval, the court quotes from these opinions at length, and concludes: "None of the later cases departs from the doctrine of *Southern Pacific Co.* v. *Jensen* and *Knickerbocker Ice Co.* v. *Stewart,* and, we think, the provisions of the Act of 1922 cannot be reconciled therewith." It is noticeable that these quotations all center upon the point, as they did in *State Industrial Commission* v. *Nordenholt Co.*, that enforcing liability for an injury received while engaged in maritime work and in fulfillment of a maritime contract, by the remedy provided by the Compensation Acts, would prejudice the characteristic features of the general maritime law and interfere with the proper harmony and uniformity of that law. "Without doubt," the court says, "Congress has power to alter, amend or revise the maritime law by statutes of general application embodying its will and judgment.

This power, we think, would permit enactment of a general employers' liability law or general provisions for compensating injured employees; but it may not be delegated to the several States. The grant of admiralty and maritime jurisdiction looks to uniformity; otherwise wide discretion is left to Congress." It is likewise noticeable that the court does not stop to make distinction between different forms of Compensation Acts. Its doctrine applies to the contractual as well as the compulsory form. Washington has a compulsory Compensation Act, while California has an optional or contractual Act. Mr. Justice Brandeis filed a most comprehensive dissent, in which he pointed out the practical effect of the doctrine of this and related cases and its far reaching influence.

*Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479, 43 Sup. Ct. 418, and *Robins Dry Dock Repair Co.* v. *Dahl,* 266 U. S. 449, 45 Sup. Ct. 157, are recent cases illustrating the extent of the jurisdiction of the admiralty court and the consistence with which the Supreme Court sustains its holding in the *Jensen* case. The State decisions since the *Jensen* and *Knickerbocker Ice Co.* cases, with two exceptions, accept and apply the doctrine of these cases. *Dorman's Case,* 236 Mass. 583, 129 N. E. 352; *Home Life & Accident Co.* v. *Wade* (Texas) 236 S. W. 778; *Foppen* v. *Fase & Co.,* 219 Mich. 136, 188 N. W. 542. In *Rolph Co.* v. *Industrial Accident Commission,* 192 Cal. 398, 220 Pac. 669, the question of an elective Compensation Act, such as California's, differentiating the case from the *Jensen* case, was made and decided adversely to the claimant, and the court also held the second amendment unconstitutional. Its decision was rendered prior to the holding of the amendment unconstitutional in the cases of *Washington* v. *Dawson & Co.* and *Industrial Accident Commission* v. *Rolph Co.,* to which we

have referred, in 264 U. S. 219, 44 Sup. Ct. 302.   The
claim that the *Jensen* case applied to a compulsory
and not to an elective Compensation Act was raised
in *Bell* v. *Southern Casualty Co.* (Texas), 267 S. W.
Rep. 531, and repudiated.   See also *Sullivan* v. *Pitts-
burgh S. S. Co.* (Mich.) 203 N. W. Rep. 126.   In
*Berry* v. *Donovan & Sons,* 120 Me. 457, 115 Atl. 250,
the court held that the Maine Compensation Act
applied, since it was an elective act, while the *Jensen*
case applied exclusively to a compulsory Act.   The
conclusion reached by the court was right and in ac-
cordance with the United States Supreme Court de-
cisions, although placed upon an indefensible ground.
The injury occurred to plaintiff while standing on a
platform of a wharf engaged in unloading a vessel lying
in navigable water.   He was not in the performance
of a maritime contract, since he stood upon a platform
upon a wharf, and this was a part of the land.   See
also *West* v. *Kozer,* 104 Ore. 94, 206 Pac. 542.

We have made this resumé of the decisions of the
United States Supreme Court for the purpose of dem-
onstrating by them that that court had conclusively
and finally adopted the ruling in the *Jensen* case, and
that it is entirely clear from its opinions and those of
the State courts, which it had before it, that it in-
tended in the application of its ruling no distinction
to be made between the compulsory and the elective
or contractual Compensation Act.

We have given careful thought to the fact, as evi-
denced by the course of decision and of the two amend-
ments of Congress, that professional and judicial
opinion had been reluctant to accept the doctrine of
the *Jensen* case, to the large number of thoughtful and
learned articles in legal publications in criticism of its
doctrine, to the exposition of the admiralty jurisdic-
tion presented in the dissenting opinions of Mr. Jus-

tice Holmes, Mr. Justice Pitney and Mr. Justice Brandeis, and to the claim that the *Jensen* case nullifies all workmen's compensation law so far as concerns injuries occurring on navigable water while engaged in maritime work, since no Federal law could satisfy the social needs of the several States, but we do not think the examination of the question of the admiralty jurisdiction is now before us. That was determined, so far as it is involved in this case, by the *Jensen* case, which controls our present decision. Few subjects in recent years have been presented to the court with more clearness, power and persistency than has the doctrine involved in the *Jensen* case; that court has had every opportunity to satisfy itself of its soundness, and its continued reiteration of the doctrine of this case must be accepted as its final word.

At the time the *Kennerson* case was decided, no courts, so far as we know, had decided this point, but when the *Jensen* case was decided all State courts which had passed upon the point in cases of award made under Compensation Acts for injuries occurring on navigable water while engaged in maritime work, had decided in accordance with the conclusion reached by this court. *Lindstrom* v. *Mutual Steamship Co.,* 132 Minn. 328, 156 N.W. 669; *North Pacific S. S. Co.* v. *Industrial Accident Commission,* 174 Cal. 346, 163 Pac. 199. That conclusion was supported by the decisions of the United States Supreme Court, notably in the case of *The Hamilton,* 207 U. S. 398, 28 Sup. Ct. 133, and was, we believe, the law at the time of our decision. It ceased to be the law when the *Jensen* case was decided.

The Superior Court is advised to sustain the appeal from the Commissioner and vacate his award.

In this opinion the other judges concurred.