STATE OF WASHINGTON *v.* W. C. DAWSON & COMPANY.

ERROR TO SUPREME COURT OF THE STATE OF WASHINGTON.

INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA ET AL. *v.* JAMES ROLPH COMPANY ET AL.

·ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Nos. 366 and 684.   Argued January 8, 9, 1924.—Decided February 25, 1924.

1. The Act of Congress of June 10, 1922, c. 216, 42 Stat. 634, which, by amendment of Judicial Code, §§ 24, 256, undertakes to permit application of the workmen's compensation laws of the several States to injuries within the admiralty and maritime jurisdiction, excepting the masters and crews of vessels, is unconstitutional, for the reasons explained in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, and other cases reviewed.   P. 222.

2. So *held,* (a) in a case in which it was sought to compel an employer of stevedores to contribute to an accident fund, as provided by the Workmen's Compensation Act of Washington; (b) in a case involving the power of a commission of California to award compensation for the death of a workman killed while engaged at maritime work, under maritime contract, upon a vessel moored at dock and discharging her cargo.   *Id.*

3. The proviso in the above act of Congress "that the jurisdiction of the district courts shall not extend to causes arising out of injuries

to or death of persons other than the master or members of the crew, for which compensation is provided by the workmen's compensation law of any State ", etc., was intended to supplement the provision allowing rights and remedies under state compensation laws; and, that being ineffectual, the proviso is also. P. 223.
122 Wash. 572, and 220 Pac. 669, affirmed.

ERROR to a judgment of the Supreme Court of Washington, affirming a judgment of a Superior Court of the State which dismissed, on demurrer, a complaint brought by the State to recover the sum of $211.45, from W. C. Dawson & Company, as a contribution to the accident fund created by Laws of Washington, 1911, c. 74, the amount claimed being computed on the wages paid by defendant to stevedores working on board ship.

Error, also, to a judgment of the Supreme Court of California, rendered on review of an award made by the Industrial Accident Commission of the State to the dependents of an employee of the James Rolph Company who died as a result of injuries sustained while working as a stevedore upon a vessel afloat on the navigable waters of San Francisco Bay. The judgment annulled the award as in excess of the Commission's jurisdiction.

*Mr. John H. Dunbar,* Attorney General of the State of Washington, with whom *Mr. Raymond W. Clifford,* Assistant Attorney General, was on the brief, for plaintiff in error in No. 366.

*Mr. Warren H. Pillsbury* for plaintiffs in error in No. 684..

*Mr. Robert S. Terhune* and *Mr. Howard G. Cosgrove,* for defendant in error in No. 366, submitted.

*Mr. G. Bowdoin Craighill, Mr. L. A. Redman* and *Mr. Chas. B. Tebbs,* for defendants in error in No. 684, submitted. *Mr. Jewel Alexander* and *Mr. W. C. Bacon* were also on the brief.

*Mr. Alfred J. Schweppe,* by leave of Court, filed a brief as *amicus curiae.*

*Mr. Henry C. Hunter* and *Mr. Joseph P. Chamberlain,* by leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

These causes turn upon the same point, were heard together and it will be convenient to decide them by one opinion.

The immediate question presented by number three hundred sixty-six is whether one engaged in the business of stevedoring, whose employees work only on board ships in the navigable waters of Puget Sound, can be compelled to contribute to the accident fund provided for by the Workmen's Compensation Act of Washington. The State maintains that the objections to such requirement pointed out in *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, were removed by the Act of June 10, 1922, c. 216, 42 Stat. 634.[1] Its Supreme Court ruled otherwise. 122 Wash. 572, 582.

---

[1] That clause 3 of section 24 of the Judicial Code is hereby amended to read as follows:

" Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel their rights and remedies under the workmen's compensation law of any State, District, Territory, or possession of the United States, which rights and remedies when conferred by such law shall be exclusive; of all seizures on land or waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize: *Provided,* That the jurisdiction of the district courts shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for

In number six hundred eighty-four the Supreme Court of California approved the conclusion of the Supreme Court of Washington and declared the Act of June 10, 1922, went beyond the power of Congress. It accordingly held the Industrial Accident Commission had no jurisdiction to award compensation for the death of a workman killed while actually engaged at maritime work, under maritime contract, upon a vessel moored at her dock in San Francisco Bay and discharging her cargo. 220 Pac. 669.

The judgments below must be affirmed; the doctrine of *Knickerbocker Ice Co.* v. *Stewart,* to which we adhere, permits no other conclusion. There we construed the Act of October 6, 1917, c. 97, 40 Stat. 395,[2] which undertook

---

which compensation is provided by the workmen's compensation law of any State, District, Territory, or possession of the United States."

Sec. 2. That clause 3 of section 256 of the Judicial Code is hereby amended to read as follows:

" Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel, their rights and remedies under the workmen's compensation law of any State, District, Territory, or possession of the United States."

[2] That clause three of section twenty-four of the Judicial Code is hereby amended to read as follows:

" Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any State; of all seizures on land or waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize."

Sec. 2. That clause three of section two hundred and fifty-six of the Judicial Code is hereby amended to read as follows:

" Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any State."

to amend the provision of §§ 24 and 256, Judicial Code, which saves to suitors in all civil causes of admiralty and maritime jurisdiction " the right of a common-law remedy where the common law is competent to give it," by adding the words " *and to claimants the rights and remedies under the workmen's compensation law of any State.*" After declaring the true meaning and purpose of the act, we held it beyond the power of Congress.

Except as to the master and members of the crew, the Act of 1922 must be read as undertaking to permit application of the workmen's compensation laws of the several States to injuries within the admiralty and maritime jurisdiction substantially as provided by the Act of 1917. The exception of master and crew is wholly insufficient to meet the objections to such enactments heretofore often pointed out. Manifestly, the proviso which denies jurisdiction to district courts of the United States over causes arising out of the injuries specified was intended to supplement the provision covering rights and remedies under state compensation laws. As that provision is ineffective, so is the proviso. To hold otherwise would bring about an unfortunate condition wholly outside the legislative intent.

Counsel insist that later conclusions of this Court have modified the doctrine of *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, and *Knickerbocker Ice Co.* v. *Stewart.* They rely especially upon *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, and *Industrial Commission* v. *Nordenholt Co.,* 259 U. S. 263.

*Southern Pacific* v. *Jensen* involved a claim under the New York Compensation Act for death resulting from injuries sustained while the deceased was on board and engaged in unloading the vessel. We held (pp. 216, 217)— " It would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That

this may be done to some extent cannot be denied. . . . Equally well established is the rule that state statutes may not contravene an applicable act of Congress or affect the general maritime law beyond certain limits. . . . And plainly, we think; no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself. . . . The work of a stevedore in which the deceased was engaging is maritime in nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 59, 60. If New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other States may do likewise. The necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish; and freedom of navigation between the States and with foreign countries would be seriously hampered and impeded. A far more serious injury would result to commerce than could have been inflicted by the Washington statute authorizing a materialman's lien condemned in *The Roanoke.* [189 U. S. 185.] The legislature exceeded its authority in attempting to extend the statute under consideration to conditions like those here disclosed."

In *Knickerbocker Ice Co.* v. *Stewart* (pp. 163, 164, 166), where claim was made under the New York Act on account of the death of a bargeman who fell into the Hudson River and drowned, this was said—

"We conclude that [by the Act of October 6, 1917]
Congress undertook to permit application of Workmen's
Compensation Laws of the several States to injuries with-
in the admiralty and maritime jurisdiction; and to save
such statutes from the objections pointed out by *Southern
Pacific Co.* v. *Jensen*. It sought to authorize and sanction
action by the States in prescribing and enforcing, as to all
parties concerned, rights, obligations, liabilities and rem-
edies designed to provide compensation for injuries suf-
fered by employees engaged in maritime work.

"And so construed, we think the enactment is beyond
the power of Congress. Its power to legislate concerning
rights and liabilities within the maritime jurisdiction and
remedies for their enforcement, arises from the Constitu-
tion, as above indicated. The definite object of the grant
was to commit direct control to the Federal Government;
to relieve maritime commerce from unnecessary burdens
and disadvantages incident to discordant legislation; and
to establish, so far as practicable, harmonious and uni-
form rules applicable throughout every part of the Union.

"Considering the fundamental purpose in view and the
definite end for which such rules were accepted, we must
conclude that in their characteristic features and essential
international and interstate relations, the latter may not
be repealed, amended or changed except by legislation
which embodies both the will and deliberate judgment of
Congress. The subject was intrusted to it to be dealt with
according to its discretion—not for delegation to others.
To say that because Congress could have enacted a com-
pensation act applicable to maritime injuries, it could
authorize the States to do so as they might desire, is false
reasoning. Moreover, such an authorization would in-
evitably destroy the harmony and uniformity which the
Constitution not only contemplated but actually estab-
lished—it would defeat the very purpose of the grant.
See *Sudden & Christenson* v. *Industrial Accident Com-
mission*, 188 Pac. Rep. 803.

" Congress cannot transfer its legislative power to the States—by nature this is non-delegable.  .  .  .

" Here, we are concerned with a wholly different constitutional provision—one which, for the purpose of securing harmony and uniformity, prescribes a set of rules, empowers Congress to legislate to that end, and prohibits material interference by the States.  Obviously, if every State may freely declare the rights and liabilities incident to maritime employment, there will at once arise the confusion and uncertainty which framers of the Constitution both foresaw and undertook to prevent."

In *Western Fuel Co.* v. *Garcia,* a proceeding begun in admiralty to recover damages for death of a stevedore fatally injured while working in the hold of a vessel then anchored and discharging her cargo, we held (p. 242)— "As the logical result of prior decisions we think it follows that, where death upon such waters results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given.  The subject is maritime and local in character and the specified modification of or supplement to the rule applied in admiralty courts, when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations."

*Grant Smith-Porter Ship Co.* v. *Rohde* was a proceeding in admiralty to recover damages from the ship-builder for injuries which the carpenter received while working on an unfinished vessel moored in the Willamette River at Portland, Oregon.  " The contract for constructing ' The Ahala ' was nonmaritime, and although the incompleted structure upon which the accident occurred was lying in

navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce." We held the matter was only of local concern and that to permit the rights and liabilities of the parties to be determined by the local law would not interfere with characteristic features of the general maritime rules. We also pointed out the conclusion was in entire accord with prior cases.

*Industrial Commission* v. *Nordenholt Co.* related to a claim based upon death which resulted from injuries received by the longshoreman while on the dock—a matter never within the admiralty jurisdiction. "Insana was injured upon the dock, an extension of the land, *Cleveland Terminal & Valley R. R. Co.* v. *Cleveland S. S. Co.*, 208 U. S. 316, and certainly prior to the Workmen's Compensation Act the employer's liability for damages would have depended upon the common·law and the state statutes. Consequently, when the Compensation Act superseded other state laws touching the liability in question, it did not come into conflict with any superior maritime law. And this is true whether awards under the act are made as upon implied·agreements or otherwise. The stevedore's contract of employment did not contemplate any dominant federal rule concerning the master's liability for personal injuries received on land."

None of the later causes departs from the doctrine of *Southern Pacific Co.* v. *Jensen* and *Knickerbocker Ice Co.* v. *Stewart*, and, we think, the provisions of the Act of 1922 cannot be reconciled therewith.

Without doubt Congress has power to alter, amend or revise the maritime law by statutes of general application embodying its will and judgment. This power, we think, would permit enactment of a general employers' liability law or general provisions for compensating injured employees; but it may not be delegated to the several States. The grant of admiralty and maritime jurisdiction looks to

uniformity; otherwise wide discretion is left to Congress. *Knickerbocker Ice Co.* v. *Stewart.* Exercising another power—to regulate commerce—Congress has prescribed the liability of interstate carriers by railroad for damages to employees (Act April 22, 1908, c. 149, 35 Stat. 65) and thereby abrogated conflicting local rules. *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147.

This cause presents a situation where there was no attempt to prescribe general rules. On the contrary, the manifest purpose was to permit any State to alter the maritime law and thereby introduce conflicting requirements. To prevent this result the Constitution adopted the law of the sea.as the measure of maritime rights and obligations. The confusion and difficulty, if vessels were compelled to comply with the local statutes at every port, are not difficult to see. Of course, some within the States may prefer local rules; but the Union was formed with the very definite design of freeing maritime commerce from intolerable restrictions incident to such control. The subject is national. Local interests must yield to the common welfare. The Constitution is supreme.

*Affirmed.*

MR. JUSTICE HOLMES.

The reasoning of *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, and cases following it never has satisfied me and therefore I should have been glad to see a limit set to the principle. But I must leave it to those who think the principle right to say how far it extends.

MR. JUSTICE BRANDEIS, dissenting.

A concern, doing a general upholstering business in New York, directs one of its regular employees, resident there, to make repairs on a vessel lying alongside a New York dock. The ship, then temporarily out of commission, is owned and enrolled in New York, and when used is em-

ployed only within the State. While on the vessel engaged in making the repairs, the employee is injured without the fault of anyone and is disabled for life. A statute of New York provides that, in such a case, he and his dependents shall receive compensation out of funds which employers are obliged to provide. To such state legislation Congress has, in express terms, given its sanction. Under the rule announced by the Court, the Federal Constitution prohibits recovery.[1] If, perchance, the accident had occurred while the employee so engaged was on the dock, the Constitution would permit recovery.[2] Or, if happily he had been killed and the accident had been due to the employer's negligence, recovery (which is provided for by another state statute) would likewise be permitted under the Constitution, even though the accident had occurred on board the vessel.[3]

The Constitution contains, of course, no provision which, in terms, deals, in any way, with the subject of workmen's compensation. The prohibition found by the Court rests solely upon a clause in § 2 of Article III:

---

[1] Compare *Peters* v. *Veasey,* 251 U. S. 121, a stevedore; also, *Morse Dry Dock & Repair Co.* v. *Danielsen,* 235 N. Y. 439; certiorari denied, 262 U. S. 756; *Morse Dry Dock & Repair Co.* v. *Warren,* 235 N. Y. 445; certiorari denied, 262 U. S. 756; *Morse Dry Dock & Repair Co.* v. *Connelly,* 235 N. Y. 602; certiorari denied, 262 U. S. 756, all drydock employees. In *Industrial Accident Comm.* v. *Zurich General Accident, etc., Co.,* 218 Pac. 563; certiorari denied, 263 U. S. 722, the injury occurred in connection with the operations of a harbor dredger, not engaged in commerce or navigation. In *Industrial Accident Comm.* v. *Alaska Packers Association,* 218 Pac. 561; certiorari denied, 263 U. S. 722; the accident occurred on an Alaska fishing vessel while laid up for the winter at San Francisco, alongside the dock.

[2] *State Industrial Commission* v. *Nordenholt Corporation,* 259 U. S. 263, a stevedore.

[3] *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479, a member of the crew; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, a stevedore. See also *Steamboat Co.* v. *Chase,* 16 Wall. 522; *Sherlock* v. *Alling,* 93 U. S. 99; *The Hamilton,* 207 U. S. 398.

"The judicial power [of the United States] shall extend . . . to all cases of admiralty and maritime jurisdiction." [4] The conclusion that the state law violates the Constitution and that the consent of Congress cannot save it, is reached solely by a process of deduction. The chain of reasoning involved is a long one. The argument is that the grant of judicial power to the United States confers upon Congress, by implication, legislative power over the substantive maritime law; that this legislative power in Congress (while not necessarily exclusive) precludes state legislation which "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international or interstate relations; " that there is a rule of the general maritime law by which an employer is not liable, except in case of negligence, for an occupational injury occurring on board a vessel; that the rule applies whenever the vessel on which the injury occurs is afloat on navigable water, even if the vessel, made fast to a dock, is out of commission; that the rule applies to occupations which, like upholstering, are not in their nature inherently maritime; that the rule governs the relations not only of the ship and its owners to their employees, but also the relations of independent contractors to their employees who customarily work on land; that this rule is a characteristic feature of the general maritime law; that for a State to change the rule, even as applied to independent contractors doing work on craft moored to a dock, temporarily disabled, and normally employed wholly within the State, interferes with the

---

[4] Article I, § 8, confers upon Congress power " To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof." The conclusion reached by the Court emphasises not the breadth of the congressional power, but the limitations upon it.

proper harmony and uniformity of the general maritime law in its international and interstate relations; and that, hence, a statute of a State which provides that employers within it shall be liable to employees within it for occupational accidents occurring within it violates the Federal Constitution, notwithstanding the state statute is expressly sanctioned by Congress.

Such is the chain of reasoning. Every link of the chain is essential to the conclusion stated. If any link fails, the argument falls. Several of the links are, in my opinion, unfounded assumption which crumbles at the touch of reason. How can a law of New York, making a New York employer liable to a New York employee for every occupational injury occurring within the State, mar the proper harmony and uniformity of the assumed general maritime law in its interstate and international relations, when neither a ship, nor a ship owner, is the employer affected, even though the accident occurs on board a vessel on navigable waters? The relation of the independent contractor to his employee is a matter wholly of state concern. The employer's obligation to pay and the employee's right to receive compensation are not dependent upon any act or omission of the ship or of its owners. To impose upon such employer the obligation to make compensation in case of an occupational injury in no way affects the operation of the ship. Nor can it affect the ship owners in any respect, except as every other tax, direct or indirect, laid by a State or municipality may affect, by increasing the cost of living and of doing business, every one who has occasion to enter it and many who have not.[5] This is true of the application of the workmen's compensation law, whether the service rendered by the independent contractor is in its nature non-

[5] That the obligation to contribute to the compensation fund may be deemed a tax, see *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 237.

maritime, like upholstering, or is inherently maritime, like stevedoring. The requirement by the State is a regulation of the business of upholstering or stevedoring. It is not a regulation of shipping. It in no respect attempts to modify, or deal with, admiralty jurisdiction or procedure, or the substantive maritime law. It is but an exercise of the local police power.[6] To impose upon the independent employer the obligation to provide compensation for accidents occurring on a vessel in port, while the vessel is made fast to the dock, in fact, cannot conceivably interfere with the proper harmony and uniformity of the general maritime law in its international or interstate relations.

Moreover, it is not a characteristic feature of the general maritime law that the employer, in case of accident, is liable to an employee only for negligence. The characteristic feature is the very contrary. To one of the crew, the vessel and her owners are liable, even in the absence of negligence, for maintenance, care and wages, at least so long as the voyage is continued. To him, they are liable, also, even in the absence of negligence, for indemnity or damages, if the injury results from unseaworthiness of the ship, or from failure to supply and keep in order the proper appliances.[7] The legal rights, in case of accident to persons other than members of the crew, were not determined by the maritime law until recently. The admiralty court, instead of extending to these persons this characteristic feature, borrowed the rule of negligence from the common law courts, making modifications conformable to its views of justice.[8]

---

[6] Compare *New York* v. *Miln*, 11 Pet. 102; *Hooper* v. *California*, 155 U. S. 648.

[7] *The Osceola*, 189 U. S. 158; *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255.

[8] See *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 221–2,

The mere fact that the accident is an incident of a maritime contract, and the service performed thereunder is inherently maritime, does not preclude the application of the workmen's compensation law.   The stevedore can recover under the workmen's compensation law, if the injury happens to occur on land, although the contract of the stevedoring concern is confessedly a maritime one; and the stevedore is employed in a maritime service quite as much while he is on the dock as after he crosses the gangplank and enters the ship.[9]   Underlying the whole chain of reasoning, by which the conclusion is reached that the state and federal statutes are unconstitutional, will be found the legally indefensible assumption that the liability under the workmen's compensation law is governed by the law of the locality in which the accident happened; that is, by the rule that in tort the test of admiralty jurisdiction is presence on navigable waters.   There is no more reason why the mere fact that the injury occurs on navigable waters should make applicable the maritime law to liabilities arising under the workmen's compensation law, than that it should make the maritime law applicable, in such cases, to the liability under a general accident insurance policy.   Tort is, in fact, not an element in the liability created by the workmen's compensation law.[10] On the contrary, the basis of this legislation is liability without fault.   Nor does the workmen's compensation law create a status between employer and employee.   It provides an incident to the employment which is often

---

[9] In my opinion, the state law, being sanctioned by Congress, is valid, also, as applied to accidents suffered in port by persons, other than the master or member of the crew, even if the persons injured are employees of the vessel or of the owners, and notwithstanding their occupations are inherently maritime, like stevedoring.

[10] See Ernest Angell, " Recovery Under Workmen's Compensation Acts for Injury Abroad," 31 Harv. L. Rev. 619, 620.   See, also, 37 Harv. L. Rev. 375.   Compare Pound, Spirit of the Common Law (1921), 30.

likened to a contractual obligation, even where the workmen's compensation law is not of the class called optional. It will hardly be contended that an act occurring beyond the geographical limits of a State cannot be made the basis for the creation of rights to be enjoyed or enforced within it. Workmen's compensation laws which provide for compensation for injuries occurring in States other than that of the residence of the employer and the employee are held constitutional.[11] Why should they not be deemed valid where they provide for accidents occurring within the State but upon navigable waters?

A further assumption is that Congress, which has power to make and to unmake the general maritime law, can have no voice in determining which of its provisions require adaptation to peculiar local needs and as to which absolute uniformity is an essential of the proper harmony of international and interstate maritime relations. This assumption has no support in reason; and it is inconsistent (at least in principle) with the powers conferred upon Congress in other connections. The grant " of the . . . judicial power . . . to all cases of admiralty and maritime jurisdiction " is, surely, no broader in terms than the grant of power " to regulate commerce with foreign nations and among the several States." Yet as to commerce, Congress may, at least in large measure, determine whether uniformity of regulation is required or diversity is permissible.[12] Likewise, Congress is given exclusive power of legislation over its forts, arsenals, dockyards, and other needful places and buildings. But it may permit the

[11] *Quong Ham Wah Co.* v. *Industrial Accident Commission,* 184 Cal. 26, 35–37, 39, 44, 45; 255 U. S. 445. Compare *Matter of Post* v. *Burger & Gohlke,* 216 N. Y. 544; *Anderson* v. *Miller Scrap Iron Co.,* 169 Wis. 106. See Ernest Angell, *supra,* 31 Harv. L. Rev. 619, 628, 636.

[12] See *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 244–251; *Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311; *In re Rahrer,* 140 U. S. 545, 564.

diverse laws of the several States to govern the relations of men within them.[13]  Congress has exclusive power to legislate concerning the Army and Navy of the United States, to declare war, to determine to what extent citizens shall aid in its prosecution, and how effective aid can best be secured.  But state legislation directly affecting these subjects has been sustained.[14]  In respect to bankruptcy, duties, imposts, excises and naturalization the Constitution prescribes uniformity.  Still, the provision in the bankruptcy law giving effect to the divergent exemption laws of the several States was held valid.[15]  Absolute uniformity in things maritime is confessedly not essential to the proper harmony of the maritime law in its interstate and international relations.  This is illustrated both by the cases which hold constitutional state regulation of pilotage and liens created by state laws in aid of maritime contracts, and by those which hold that there are broad fields of maritime activity to which admiralty jurisdiction does not extend.  A notable instance of the latter is the liability in tort for injuries inflicted by a ship to a dock, or to maritime workers on the dock engaged in the inherently maritime operation of stevedoring.[16]

The recent legislation of Congress seeks, in a statesman-like manner, to limit the practical scope and effect of our decisions in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, and later cases, by making them hereafter applicable only to the

[13] Compare *Fort Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. 525; *Chicago & Pacific Ry. Co.* v. *McGlinn,* 114 U. S. 542; *Western Union Tel. Co.* v. *Chiles,* 214 U. S. 274; *Omaechevarria* v. *Idaho,* 246 U. S. 343.

[14] *Gilbert* v. *Minnesota,* 254 U. S. 325.  Compare *Moore* v. *Illinois,* 14 How. 13; *Halter* v. *Nebraska,* 205 U. S. 34.

[15] *Hanover National Bank* v. *Moyses,* 186 U. S. 181.  See *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 168.

[16] See *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 219–220.

relations of the ship to her master and crew. To hold that Congress can effect this result by sanctioning the application of state workmen's compensation laws to accidents to any other class of employees occurring on the navigable waters of the State would not, in my judgment, require us to overrule any of these cases. It would require merely that we should limit the application of the rule therein announced, and that we should declare our disapproval of certain expressions used in the opinions. Such limitation of principles previously announced, and such express disapproval of *dicta,* are often necessary. It is an unavoidable incident of the search by courts of last resort for the true rule.[17] The process of inclusion and exclusion, so often applied in developing a rule, cannot end with its first enunciation. The rule as announced must be deemed tentative. For the many and varying facts to which it will be applied cannot be foreseen. Modification implies growth. It is the life of the law.

If the Court is of opinion that this act of Congress is in necessary conflict with its recent decisions, those cases should be frankly overruled. The reasons for doing so are persuasive. Our experience in attempting to apply the rule, and helpful discussions by friends of the Court, have made it clear that the rule declared is legally unsound;[18] that it disturbs legal prin-

---

[17] Compare, *e. g., Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, qualifying *Texas Co.* v. *Brown,* 258 U. S. 466; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642; *Askren* v. *Continental Oil Co.,* 252 U. S. 444; *Standard Oil Co.* v. *Graves,* 249 U. S. 389, and *Baltimore & Ohio S. W. R. R. Co.* v. *Settle,* 260 U. S. 166, 173, overruling *dicta* in *Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas,* 204 U. S. 403.

[18] See Edgar Tremlett Fell, Recent Problems in Admiralty Jurisdiction (1922), 1–53; John Gorham Palfrey, "The Common Law Courts and the Law of the Sea," 36 Harv. L. Rev. 777; also, Vol. 31, p. 488; Vol. 34, p. 82; Vol. 35, p. 743; Vol. 37, p. 478; E. Merrick Dodd, Jr., "The New Doctrine of the Supremacy of Admiralty over the Common Law," 21 Col. L. Rev. 647; also, Vol. 17, p. 703; Vol. 20, p. 685; Frederic Cunningham, "Is Every County Court in the United States

ciples long established; and that if adhered to, it will make a serious addition to the classes of cases which this Court is required to review.[19]  Experience and discussion have also made apparent how unfortunate are the results, economically and socially.   It has, in part, frustrated a promising attempt to alleviate some of the misery, and remove some of the injustice, incident to the conduct of industry and commerce.   These far-reaching and unfortunate results of the rule declared in *Southern Pacific Co*. v. *Jensen* cannot have been foreseen when the decision was rendered.   If it is adhered to, appropriate legislative provision, urgently needed, cannot be made until another amendment of the Constitution shall have been adopted. For no federal workmen's compensation law could satisfy the varying and peculiar economic and social needs incident to the diversity of conditions in the several States.[20]

---

a Court of Admiralty?" 53 Amer. L. Rev. 749; " The Tables Turned—Lord Coke Demolished," 55 Amer. L. Rev. 685; J. Whitla Stinson, "Admiralty and Maritime Jurisdiction," 54 Amer. L. Rev. 908; Yale L. Journal, Vol. 27, pp. 255, 924; Vol. 28, pp. 281, 835; Vol. 29, p. 925; Mich. L. Rev., Vol. 15, p. 657; Vol. 16, p. 562; Vol. 18, p. 793; Calif. L. Rev., Vol. 6, p. 69; Vol. 8, p. 338; Vol. 10, p. 234; Minn. L. Rev., Vol. 2, p. 145; Vol. 4, p. 444; Vol. 6, p. 230; Southern L. Q., Vol. 2, p. 304; Vol. 3, p. 76; Francis J. MacIntyre, "Admiralty and the Workmen's Compensation Law," 5 Cornell L. Q. 275; 91 Central L. J. 43; 6 Ill. L. Q. 157; 3 Va. L. Reg. (n. s.) 290–296; 61 Amer. L. Reg. (n. s.) 42–45.

[19] By making the substantive maritime law the rule of decision in the common law courts exercising concurrent jurisdiction, the rule of *Southern Pacific Co.* v. *Jensen* introduces into every case in a state court involving maritime law, even if it is not affected by any state statute, a federal question which may be brought to this Court for review either by writ of error or by petition for a writ of certiorari. Compare *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282, 293–303; *Great Northern Ry. Co.* v. *Merchants Elevator Co.*, 259 U. S. 285, 290.

[20] Compare *New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147, 169.  See Andrew Furuseth, " Harbor Workers Are Not Seamen: An Essential Distinction in Compensation Legislation," 11 Am. Labor

The doctrine of *stare decisis* should not deter us from overruling that case and those which follow it. The decisions are recent ones. They have not been acquiesced in. They have not created a rule of property around which vested interests have clustered. They affect solely matters of a transitory nature. On the other hand, they affect seriously the lives of men, women and children, and the general welfare. *Stare decisis* is ordinarily a wise rule of action. But it is not a universal, inexorable command. The instances in which the Court has disregarded its admonition are many.[21] The existing admiralty jurisdiction rests, in large part, upon like action of the Court in *The Genesee Chief*, 12 How. 443, 456. In that case the Court overruled *The Thomas Jefferson*, 10 Wheat. 428, and

Leg. Rev. 139; T. V. O'Connor, " The Plight of the Longshoremen," *ibid*, p. 144; J. P. Coughlin, "Accident Protection for Ship Repairmen," *ibid*, p. 146; J. P. Chamberlain, " The Conflict of Jurisdiction in Compensation for Maritime Workers," *ibid*, p. 133; L. W. Hatch, " The ' Maritime ' Twilight Zone from the Standpoint of Compensation Administration," *ibid*, 148; J. B. Andrews, " Legislative Program of Accident Compensation for ' Maritime ' Workers," *ibid*, p. 152. See also, *ibid*, Vol. 10, pp. 117, 241; Vol. 12, pp. 53, 69, 103, 104.

[21] See *Lee* v. *Chesapeake & Ohio Ry. Co.*, 260 U. S. 653, 659, overruling *Ex parte Wisner*, 203 U. S. 449; *Terral* v. *Burke Construction Co.*, 257 U. S. 529, 533, overruling *Doyle* v. *Continental Insurance Co.*, 94 U. S. 535, and *Security Mutual Life Insurance Co.* v. *Prewitt*, 202 U. S. 246; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8, 25, and *Motion Picture Co.* v. *Universal Film Co.*, 243 U. S. 502, 518, overruling *Henry* v. *Dick Co.*, 224 U. S. 1; *United States* v. *Nice*, 241 U. S. 591, 601, overruling *Matter of Heff*, 197 U. S. 488; *Pollock* v. *Farmers' Loan & Trust Co.*, 158 U. S. 601, overruling *Hylton* v. *United States*, 3 Dall. 171; *Roberts* v. *Lewis*, 153 U. S. 367, 379, overruling *Giles* v. *Little*, 104 U. S. 291; *Brenham* v. *German American Bank*, 144 U. S. 173, 187, overruling *Rogers* v. *Burlington*, 3 Wall. 654, and *Mitchell* v. *Burlington*, 4 Wall. 270; *Leisy* v. *Hardin*, 135 U. S. 100, 118, overruling *Pierce* v. *New Hampshire*, 5 How. 504; *Morgan* v. *United States*, 113 U. S. 476, 496, overruling *Texas* v. *White*, 7 Wall. 700; *Legal Tender Cases*, 12 Wall. 457, 553, overruling *Hepburn* v. *Griswold*, 8 Wall. 603.

*The Steamboat Orleans* v. *Phoebus,* 11 Pet. 175; and a doctrine declared by Mr. Justice Story with the concurrence of Chief Justice Marshall, and approved by Chancellor Kent, was abandoned when found to be erroneous, although it had been acted on for twenty-six years.