WHITE v. J. P. FLORIO & CO.

(January 27, 1930.   Opinion and Decree.)

Edward S. Spiro, of New Orleans, attorney for plaintiff, appellant.

Gordon Boswell, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. This is a suit by the wife of Henry Guidry, deceased, claiming compensation for the death of her husband, which occurred on May 10, 1927, at about 10 o'clock p. m. Defendant filed an exception of no cause of action, which was overruled, and the case, following a trial on the merits, was decided in favor of defendant. Plaintiff has appealed.

Defendant is engaged in business as a stevedore, and at the time deceased was killed was loading a cargo of cotton into the hold of the "S. S. Jacques Cartier," then lying in the Mississippi river at the Third Street Dock in New Orleans. Deceased was employed by defendant as a longshoreman and assisted in placing the cotton in the hold of the vessel. The day he met his death he had been so employed from 7 o'clock in the morning until 10 o'clock at night, when he concluded to quit work and notified defendant's foreman of his intention, requesting his "time." The foreman declined to give him his time immediately, whereupon deceased walked off the vessel onto the dock, and about half an hour later was killed by a dock board policeman.

Plaintiff contends that the policeman was instigated by the defendant's foreman to kill her husband "if he did not continue at his work," and that the foreman was present at the time; that her husband was shot while walking away from the policeman without cause or provocation. On the other hand, defendant says that the killing occurred without the knowledge of its foreman or other employees, and was the result of an altercation between the policeman and the deceased, Guidry, who resisted arrest and attacked the policeman with his cotton hook.

As to the exception of no cause of action, it is argued that the deceased was engaged in a maritime occupation, and that therefore plaintiff's rights are controlled by the maritime law because within the admiralty and maritime jurisdiction as established by section 2 of article 3 of the Constitution of the United States. This contention is without merit. In Smith & Son vs. Taylor, 276 U. S. 179, 48 S. Ct. 228, 229, 72 L. Ed. 520, a case which was considered by the Supreme Court of the United States on writ of error to this court, it was held that a longshoreman who, while standing on a gang-plank, was struck by a sling used in loading a vessel, knocked in the Mississippi river, and drowned, could recover under the state compensation law, because the place where the injury was received was the test of jurisdiction; if upon the land, the state compensation would apply, and if upon the sea, the

admiralty jurisdiction would attach. We quote the following from that decision:

"Deceased was engaged in maritime work under a maritime contract. If the cause of action arose upon the river, the rights of the parties are controlled by maritime law, the case is within the admiralty and maritime jurisdiction, and the application of the Louisiana Compensation Law violated section 2 of article 3. But, if the cause of action arose upon the land, the state law is applicable. The Plymouth, 3 Wall. 20, 33, 18 L. Ed. 125; Atlantic Transport Co. vs. Imbrovek, 234 U. S. 52, 59, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; Southern Pacific Co. vs. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Knickerbocker Ice Co. vs. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Washington vs. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646."

On the merits, we find the facts to be as maintained by defendant and as testified to by its witnesses. Guidry was shot by Pennington, the policeman, while resisting arrest, after having attacked Pennington with his cotton hook. It appears that after leaving the ship he loitered about the docks muttering to himself and occasionally swearing. His employer had nothing to do with the killing, its foreman was not present, and, we are convinced, knew nothing of it until after it had happened. The testimony to the contrary is that given by the witness Hall, who says that Guidry was killed while running away from Pennington, who, with defendant's foreman, O'Donnell, was in pursuit. There is an admission in the record that two other witnesses, who, like Hall, were fellow employees of the deceased, Guidry, would testify to the same effect. It is probable that Hall was mistaken and that he saw Guidry walking away after he had been shot, which Pennington, who killed him, says he did, before collapsing. In any event, the evidence in the record clearly preponderates in defendant's favor, and we are unable to accept the suggestion of plaintiff's counsel, that there was a conspiracy between the witnesses for the purpose of defeating the claim of Guidry's "bereaved widow." In the first place, it is quite likely that Guidry's employer would suffer no financial loss as a result of a judgment awarding compensation in this case, for it is a matter of common knowledge that those who employ large numbers of laborers in hazardous occupations seldom carry the risk themselves. However, that may be, their testimony is unimpeached, and we must accept it, particularly since it was accepted by the judge of the trial court.

It results, therefore, from our finding of fact in this case, that there can be no recovery, since the plaintiff's death did not occur in the course of or arise out of his employment. The cases cited by plaintiff, Gilyard vs. O'Reilly, 4 La. App. 498; Schexneider vs. General American Tank Car Corp., 5 La. App. 84; Byas vs. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303; and Guderian vs. Sterling Sugar & Ry. Co., Ltd., 151 La. 59, 91 So. 546, are not in point.

The killing of plaintiff by a policeman in self-defense, following an altercation having no relation to defendant's business, is not covered by the compensation statute.

For the reasons assigned the judgment appealed from is affirmed.