FAULHABER, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(Decided April 29, 1940.)

*Messrs. McCrystal & McCrystal,* for appellant.

*Mr. Thomas J. Herbert,* attorney general, and *Mr. E. P. Felker,* for appellee.

OVERMYER, J. This is a workmen's compensation case wherein the state Industrial Commission and the Common Pleas Court denied an award to claimant for the death of her husband, upon the ground that decedent was engaged at the time of his death in a purely maritime employment and under exclusive control of maritime law and, therefore, not an employee subject to the provisions of the state Workmen's Compensation Act though his employer was a contributor to the state fund.

Claimant appeals to this court on questions of law, assigning as error the judgment of the lower court,

and error in the admission and rejection of evidence. The latter ground we find of no merit and will not discuss.

In claimant's brief it is conceded "that the Workmen's Compensation Act does not cover purely maritime employment" but, it is argued, that "where the parties have contracted with reference to the compensation act and its application will not work prejudice to any characteristic features of the general maritime law," the application of the compensation act will not be denied. ·

This argument is met by the decision of the Supreme Court in *State, ex rel. Cleveland Eng. Const. Co.* v. *Duffy*, 113 Ohio St., 579, 149 N. E., 870, where it is held that an agreement between employer and employee to submit themselves to the provisions of the Workmen's Compensation Act cannot confer jurisdiction upon the Industrial Commission in case of injury occurring in a purely maritime employment, the admiralty courts having in such case exclusive jurisdiction. See, also, *American Ship Building Co.* v. *Aros*, 128 Ohio St., 258, 191 N. E., 2.

In view of the foregoing concession and the authority cited above, the question here to be answered is: Was decedent engaged in a purely maritime employment at the time of his death?

On September 17, 1933, and for some time prior thereto, the decedent, William Faulhaber, was an engineer of the towing tug "Yale," owned by The Great Lakes Towing Company of Cleveland, Ohio, and operating in the harbor of Sandusky, Ohio, on Lake Erie, the same being in navigable waters within the jurisdiction of the maritime laws of the United States. The principal duties of the crew of this tug were to be on board and available to tow large boats from the loading and unloading docks in the harbor out into deep waters so they could proceed to various Great Lake ports and elsewhere. These operations were clearly

within the scope of admiralty jurisdiction, "done upon and relating to the sea and waters navigable therefrom, to transactions relating to commerce and navigation." 1 American Jurisprudence, 550, Section 9.

"The Great Lakes are high seas. * * * Admiralty jurisdiction prevails upon the waters of the Great Lakes as fully as upon the high seas of salt water." *Tyler* v. *Industrial Commission,* 25 Ohio App., 444, 448, 158 N. E., 586. See, also, *U. S.* v. *Rodgers,* 150 U. S., 249, 37 L. Ed., 1071, 14 S. Ct., 109; 1 Corpus Juris, 1256, Section 33, note 92.

On the date here involved, the decedent and other members of the tug crew reported on the tug for night duty at about five p. m., where it was tied up in the slip, awaiting a call to tow out of the loading docks, when loaded, a 12,000-ton boat into deep water. About 7:30 p. m. decedent and two other crew members left the tug and went uptown where, in about fifteen minutes, they separated, decedent going in one direction and the other two in another, returning to the tug about nine p. m. That was the last they saw of decedent alive, his body being found in the harbor several days later. His cap and glasses were found on the deck of the tug, indicating he had been on the tug after his return from uptown, though he was not then seen on the tug by anyone. How he got into the water, no one knows. Perhaps an inference arises that he fell in, rather than that he jumped in. About eleven p. m. the large boat at the loading docks signaled it was ready to be towed out into deep water, and it was then (for the first time) that the engineer of the tug was found missing, and it was then his cap and glasses were found on the deck.

We are not required, in this case, to enter the field of discussion as to maritime contracts and maritime torts, the principal subjects of admiralty jurisdiction. Appellant's claim is not based on a tort, a wrong doing or negligence. Workmen's compensation laws com-

pensate for accidents to workmen, regardless of wrong-doing or negligence.

We have been furnished with the facts in the case of *American Ship Building Co.* v. *Aros, supra,* which do not appear in the Supreme Court opinion. In that case the injured employee was helping to repair a boat while it was in drydock and the Supreme Court held it not a compensable case under the Workmen's Compensation Act, and that admiralty courts had exclusive jurisdiction in the matter. In that case the employer was a self-insurer under the Workmen's Compensation Law.

In *Tyler* v. *Industrial Commission, supra,* the decedent was a fisherman in Lake Erie and was washed overboard while working on a commercial fishing boat, and this court held his death resulted in employment purely maritime in character and not compensable under the Workmen's Compensation Act. The fact that he was a fisherman was not, of course, the deciding point or factor in the case but merely incidental to the question of jurisdiction. A motion to certify was overruled by the Supreme Court. In this case the employer had complied with the state Workmen's Compensation Law.

If the employment of these men was purely maritime in character, certainly the employment of decedent in the instant case was such and nothing else. He was a federal licensed maritime engineer, and his entire duties were on navigable waters under federal jurisdiction, and having direct relation to commerce and navigation.

Section 2, Article III of the Constitution of the United States, provides: "The judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction." The first United States Congress, in the Judiciary Act of 1789, declared the jurisdiction of the federal courts over causes of admiralty and maritime jurisdiction to be exclusive, but saved to suitors

in all cases "the right of a common-law remedy, where the common law is competent to give it." In the case of *Southern Pacific Co.* v. *Jensen*, 244 U. S., 205, 61 L. Ed., 1086, 37 S. Ct., 524, it was held that the remedy afforded by the Workmen's Compensation Act of New York was a remedy unknown to the common law and not among the common-law remedies saved from the exclusive jurisdiction of admiralty by the Judiciary Act of 1789. Later acts of Congress seeking to permit the application of state workmen's compensation laws to injuries within admiralty and maritime jurisdiction were held unconstitutional. *Washington* v. *W. C. Dawson & Co.*, 264 U. S., 219, 68 L. Ed., 646, 44 S. Ct., 302.

"The clause of the judicial code, 'saving to suitors, in all cases, the right of a common-law remedy where the common-law is competent to give it,' does not reserve to suitors in cases within the maritime jurisdiction the rights and remedies afforded by the workmen's compensation laws of the various states. * * *

"State laws cannot exclude a maritime contract from the domain of admiralty jurisdiction. A state can only authorize the enforcement of rights by common-law remedies, 'or such remedies as are equivalent thereto.' It is therefore settled that the state workmen's compensation act, even though elective, is inapplicable if the person injured was employed under a maritime contract and was injured on water within admiralty jurisdiction." 1 American Jurisprudence, 574, Section 50. See, also, 25 A. L. R., 1029.

The decedent in the instant case was a member of the crew of the tug "Yale," a maritime vessel subject to maritime jurisdiction, and in such case was specially exempted from the saving clause of the exclusive jurisdiction vested in admiralty courts by the federal code.

Title 28, Section 371, paragraph 3, U. S. Code, containing the saving clause, reads as follows:

"The jurisdiction vested in the courts of the United

States  *  *  *  shall be exclusive of the courts of the several states.  *  *  *

"Third. Of all civil causes of admiralty and maritime jurisdiction, *saving to suitors* in all cases *the right of a common-law remedy* where the common-law is competent to give it *and to claimants for compensation for injuries to or death* of persons *other than the master or members of the crew of a vessel,* their rights and remedies under the workmen's compensation law of any state  *  *  *."  (Italics ours.)

State workmen's compensation laws were unknown to the common-law and are creatures of statute, and did not and could not have come within the saving clause of the original Judiciary Act of 1789, and even when Congress attempted to bring state workmen's compensation acts within such saving clause, it specifically excluded "the master or members of the crew of a vessel" from such saving clause.

It is clear, therefore, that, viewed from any possible angle of the law, the event giving rise to the claim in this case is within the exclusive jurisdiction of maritime law in admiralty, and claimant cannot prosecute her claim under the Workmen's Compensation Law of Ohio.

The judgment below is correct and must be affirmed.

*Judgment affirmed.*

CARPENTER and LLOYD, JJ., concur.