701 F.2d 791
 UNITED MARINE MUTUAL INDEMNITY ASSOCIATION, Plaintiff-Appellant,
v.
Raymond J. DONOVAN, Secretary of Labor; Ralph M. Hartman,
Director, Office of Worker's Compensation Programs, United
States Department of Labor; Gerald T. Cullen, Deputy
Commissioner, Office of Worker's Compensation Programs,
United States Department of Labor, Defendants-Appellees.
 No. 81-4033.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1982.
 Decided March 15, 1983.
 
 Lester Howard Clark, San Francisco, Cal., for plaintiff-appellant.
 Maria P. Rivera, Asst. U.S. Atty., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before MERRILL, KENNEDY, and CANBY, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The marine protection and indemnity association, we are told, is a time honored, respected form in which marine employers insure each other against various liabilities. This case tests whether such associations may write liability coverage under the Longshoremen's and Harbor Workers Compensation Act without authorization from the Secretary of Labor. United Marine Mutual Indemnity Association ("United Marine") filed a complaint in the Northern District of California seeking declaratory and injunctive relief against the Department of Labor. United Marine sought a favorable interpretation of section 32 of the Longshoremen's and Harbor Workers' Compensation Act of 1927 ("LHWCA"), 44 Stat. 1424, codified at 33 U.S.C. Secs. 901-950,[1] which provides alternate ways for an employer to insure for liabilities under the Act. United Marine contended in the district court, 510 F.Supp. 34, as it does here, that the Secretary's permission is not required before a marine protection and indemnity insurance association becomes such an "authorized" alternative under section 32. The district court, Honorable Samuel Conti, District Judge, disagreed. We affirm.
 
 
 2
 It is familiar history that LHWCA, a federal compensation statute, was passed after the Supreme Court, in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), and Washington v. W.C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924), invalidated various schemes of assuring compensation for injured harbor workers. Most provisions of the Act are not relevant for our purposes here; on LHWCA, see generally, G. Gilmore and C. Black, The Law of Admiralty, Secs. 6-45 to 6-52 (2d ed. 1975) at 404-36. Suffice it to say that LHWCA does not contemplate payment by employers into a state-administered compensation fund; rather, under section 4, payment to the injured harbor worker is made directly by the employer. LHWCA thus contains various provisions designed to insure that employers, whose LHWCA liability is exclusive, will in fact pay the compensation the Act requires. Section 18(a) allows an action for unpaid compensation in federal court; sections 18(b) and 44 establish a "special fund" which, in the Secretary's discretion, may be used to compensate employees "[i]n cases where judgment cannot be satisfied by reason of the employer's insolvency or other circumstances precluding payment."
 
 
 3
 The major guarantee of the financial ability of the employer to compensate those injured or killed in the scope of its employment is found in section 32, the section at issue here. Failure of an employer to comply with section 32 exposes the employer to criminal penalties under section 38; prohibition from employment, under section 37; and civil action in which permissible defenses have been sharply limited, under section 5(a).
 
 Section 32, 33 U.S.C. Sec. 932, states:
 
 4
 (a) Every employer shall secure the payment of compensation under this chapter--
 
 
 5
 (1) By insuring and keeping insured the payment of such compensation with any stock company or mutual company or association, or with any other person or fund, while such person or fund is authorized (A) under the laws of the United States or of any State, to insure workmen's compensation, and (B) by the Secretary, to insure payment of compensation under this chapter; or
 
 
 6
 (2) By furnishing satisfactory proof to the Secretary of his financial ability to pay such compensation and receiving an authorization from the Secretary to pay such compensation directly....
 
 
 7
 (b) In granting authorization to any carrier to insure payment of compensation under this chapter the Secretary may take into consideration the recommendation of any State authority having supervision over carriers or over workmen's compensation, and may authorize any carrier to insure the payment of compensation under this chapter in a limited territory. Any marine protection and indemnity mutual insurance corporation or association, authorized to write insurance against liability for loss or damage from personal injury and death, and for other losses and damages, incidental to or in respect of the ownership, operation, or chartering of vessels on a mutual assessment plan, shall be deemed a qualified carrier to insure compensation under this chapter. The Secretary may suspend or revoke any such authorization for good cause shown after a hearing at which the carrier shall be entitled to be heard in person or by counsel and to present evidence. No suspension or revocation shall affect the liability of any carrier already incurred. (Emphasis added).
 
 
 8
 The subsection of the statute under which United Marine wishes to qualify as an authorized insurer is section 32(a)(1); section (a)(2), dealing with self-insurance, is not at issue. United Marine relies primarily on the second to last sentence of section 32(b), italicized in the portion of the statute just set forth. Appellant construes this sentence as allowing every marine protection and indemnity association ("P & I") to satisfy an employer's obligation under section 32 without need of the Secretary's approval. It is asserted that P & I's are so well established that a requirement of oversight by the Secretary would add little to the self-regulation and cross-insurance the P & I voluntarily undertakes.
 
 
 9
 The Secretary responds that the sentence on which United Marine rests its case must not be interpreted so broadly. The Secretary urges upon us a distinction between a "qualified" insurer, as P & I's are by virtue of the sentence in section 32(b), and an "authorized" one, meeting all the requirements of section 32(a)(1). The sentence on which United Marine relies, the Secretary argues, only states that P & I's meet the requirement of section 32(a)(1)(A); it does not negate the need to comply with section 32(a)(1)(B)'s requirement that the Secretary's authorization be obtained, under the standards set forth in 20 C.F.R. Part 703 (1982). We agree with the district court that the Secretary's interpretation is the more persuasive.
 
 
 10
 Although there is no precedent construing section 32 in the relevant respect, and no pertinent legislative history, we believe that the interpretation urged by United Marine should be rejected.
 
 
 11
 We can infer properly that by enacting the two sections, 32(a)(1)(A) and (B), Congress had in mind the following distinction: an entity might be legally capable of paying insurance, yet be sufficiently underfunded, poorly managed, or untrustworthy that the Secretary would not approve the use of the insurer for the purposes of LHWCA. It is obvious from the language chosen that Congress wanted a central approval mechanism to support the fiscal soundness of the LHWCA system; reliance on state regulation of the companies qua insurers was deemed unsatisfactory for the special needs of the LHWCA system.[2]
 
 
 12
 The sentence on which United Marine relies states that a P & I is "qualified to insure" under LHWCA if it is authorized by any jurisdiction to write insurance. This section is most naturally read as an amendment to section 32(a)(1)(A), which requires that an entity be authorized to write insurance under the law of the United States or any state before it is qualified to even seek the Secretary's approval under section 32(a)(1)(B). It leaves a P & I, like all other qualified insurers, still subject to the overriding requirement that the Secretary approve its fiscal soundness.
 
 
 13
 The Act would be thwarted if employers could satisfy their obligation under section 32 by joining together and obtaining a charter to write insurance under the mutual assessment plan in any nation in the world. Where Congress prevents insurers authorized and regulated under state law from securing an employer's LHWCA liability without the Secretary's approval, we doubt any legislative intent to dispense with the requirement in the case of a voluntary association of employers.
 
 
 14
 Our interpretation avoids an anomaly that would otherwise result within section 32(b). If United Marine's argument were adopted, the last two sentences of the subsection, speaking of suspension or revocation of the Secretary's authorization, would have no application to P & I's, which is after all the subject of the sentence immediately preceding. To exempt P & I's from the threat of losing its right to operate "for good cause shown" would be to grant them a surprising immunity and seems not likely to have been Congress' intent.
 
 
 15
 Judge Conti's decision comported with the precise language of the statute and with the legislative policies underlying it. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Sections of LHWCA are codified in Title 33 of the United States Code in a very simple system: section 32 of LHWCA becomes 33 U.S.C. Sec. 932; section 5 of LHWCA becomes 33 U.S.C. Sec. 905; and so on. In this opinion, references to the statute will be to LHWCA sections
 
 
 [2]
 The requirement of section 32(a)(1) that approval and regulation by state or other federal law will not suffice for the purposes of LHWCA is restated in the Secretary's regulations under the Act. 20 C.F.R. Sec. 703.106 states in part:
 No corporation, company, association, person, or fund shall write insurance under this Act without first having received from the OWCP [Office of Worker's Compensation Programs] a certificate of authority to write such insurance.